Filed 3/29/13  P. v Butler CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

|  |  |
|---|---|
| THE PEOPLE, | C068341 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF06110) |
| v. | |
| AMY MARIE BUTLER, | |
| Defendant and Appellant. | |

Two people lost their lives as a result of a plan to steal marijuana originally hatched by defendant Amy Marie Butler.  Defendant was given a break for her cooperation and then violated her probation by possessing a loaded firearm.  Defendant now appeals the state prison sentence imposed by the trial court after revocation of her probation.  The court imposed a term of 12 years for robbery of an inhabited dwelling in concert with two or more persons (Pen. Code, §§ 211, 213, subd. (a)(1)(A);[1] hereafter

---

[1] Undesignated statutory references are to the Penal Code.

1

robbery), principal armed with a firearm (§ 12022, subd. (a)(1)), and conspiracy to commit robbery (§ 182; hereafter conspiracy).

Defendant contends the trial court abused its discretion in imposing the upper term of nine years for the robbery, asserting that the court relied upon only one aggravating factor -- that she took advantage of a position of trust -- and that factor does not outweigh factors in mitigation. She also contends the court abused its discretion in imposing a consecutive term of two years for conspiracy because it failed to cite any factor supporting imposition of a consecutive sentence, and that if we find the trial court did state a reason, which could only be that she took advantage of a position of trust, this was an impermissible dual use of facts. Finally, she contends if we find her trial counsel's failure to object to the trial court's imposition of a consecutive term for conspiracy was error, she received ineffective assistance of counsel.

We reject defendant's contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### Procedural History

On June 2, 2006, defendant pleaded no contest to robbery and conspiracy, admitted a principal armed with firearm allegation, and agreed to testify against her coconspirators. In exchange for defendant's pleas, admission and truthful testimony, the parties agreed that the two counts of murder would be dismissed, defendant would initially receive probation and she would be exposed to a maximum sentence of no more than 12 years.

On May 20, 2009, following defendant's testimony against two of her coconspirators, the court suspended imposition of sentence and granted her probation for five years. Among the probation conditions were requirements that she obey all laws and not possess any firearms or ammunition. The court dismissed the two counts of murder.

2

On January 20, 2011, defendant was charged with violating her probation by failing to obey all laws and possessing a firearm and ammunition. On February 22, 2011, defendant admitted violating the condition that she obey all laws and the prosecution moved to strike the duplicative possession allegations.

On May 2, 2011, the court sentenced defendant to 12 years in prison, consisting of the upper term of nine years for the robbery, one year for the firearm enhancement, and a consecutive term of two years for the conspiracy.[2]

### Facts Underlying the Charged Offenses

In early September 2005, defendant was with Angelic Rampone, Michael Huggins, Matthew Griffin, Dustin Sparks, and Levill Hill. At some point during their conversation, Huggins said he wanted to buy some marijuana and resell it to make money. Defendant told the group that two of her friends from high school, Christopher Hance and Scott Davis, were growing a large quantity of marijuana for medicinal purposes at Hance's residence in Olivehurst. Aside from defendant, only her boyfriend, Matthew Griffin, knew Hance and Davis. Defendant told Huggins he could buy the marijuana from Hance and Davis, but at some point suggested that she could get Hance and Davis out of the house so the group could steal the marijuana. Defendant was to share in an even split of the money made from selling the marijuana.

On September 13, 2005, defendant led some of the others to Hance's residence to steal the marijuana. The plan was for defendant to get Hance and Davis out of the residence on the ruse that they were arranging for the purchase of $700 worth of marijuana. However, the plan fell through when defendant was only able to get Davis to leave.

---

[2] As part of defendant's plea bargain she agreed to waive the section 654 prohibition against multiple punishment.

About a week later, the plan to steal marijuana was again discussed. This time the plan was to tie up Hance and Davis and then steal the marijuana. Defendant said she did not want to have anything to do with the plan anymore and would not participate. However, defendant told the others that Hance and Davis were "good fighters" and that they had firearms in the trailer on the property where Davis stayed.

Early in the morning of September 27, 2005, Rampone, Huggins, Griffin, Sparks, and Hill drove to Hance's residence. Huggins was armed with a .45-caliber handgun, supposedly to be used to subdue and tie up Hance and Davis. After walking around the property, Hill and Griffen changed their minds and returned to their vehicle. Huggins entered the front yard and headed toward the trailer in the backyard while Sparks stayed at the front yard gate. Huggins called out, "Yuba County Sheriffs" and "I want Scott Davis" and walked toward the trailer.

Initially thinking law enforcement was there, Hance's father, Michael, retrieved his medical marijuana recommendation. In the meantime, Huggins shot the family dog and went to the trailer, where he struggled with Davis, who was unarmed. Huggins shot Davis during the struggle. Davis collapsed and died on the scene. As Huggins and Hance fought, Michael came out of the house and retrieved a gun from the trailer. Huggins shot Hance in the pelvis and Hance fell to the ground. Michael pointed the shotgun at Huggins but lowered it when Huggins again yelled, "Yuba County Sheriff's Department." Hance shouted, "Dad, he's not a cop, he's not a cop." Michael asked for identification. Huggins ran from the scene, joined the rest of his group and they drove off. Hance was transported to a hospital where he died from his gunshot wound.

**The Initial Sentencing**

On May 20, 2009, finding that defendant had fulfilled her end of the bargain up to that point, the court imposed the agreed-upon sentence and placed defendant on five years' formal probation. The court made clear to defendant that possession of firearms or ammunition would be a violation of her probation and the basis for a new charge.

4

Defendant signed the probation order containing the conditions that she obey all laws and not possess firearms or ammunition.

## Facts Underlying the Probation Violation

While preparing for the trial of one of the coconspirators, an investigator for the district attorney's office found a photograph on defendant's Facebook site showing a male holding her arms as she held a handgun. A sheriff's detective was told by two people who were present when the photograph was taken that the male was defendant's boyfriend and he was showing defendant how to aim and shoot at a target while they were camping.

## The Probation Violation Sentencing

The court announced its intent to sentence defendant to the upper term of nine years for the robbery, one year for the firearm enhancement and a consecutive term of two years for the conspiracy. The court then gave the following reasons for its intended sentence:

"In arriving at this intended sentence, the Court has considered that Defendant *took advantage of a position of trust*. She was friends with the victims and *introduced and set up the initial meeting* to purchase marijuana. *As a result of her involvement and the information she subsequently provided, the victims were shot to death* with a .45-caliber handgun. The Court has considered that Defendant has no known prior criminal record; however, in considering the totality of the circumstances, I do believe that the upper term is warranted."[3] (Italics added.) Later, in responding to defense counsel's

---

[3] Prior to stating the reasons for its intended state prison sentence, the court cited several reasons for denying another grant of probation. (Cal. Rules of Court, rule 4.414(a)(1), (a)(3), (a)(4), (a)(8); undesignated rule references are to the California Rules of Court.) While the trial court could have used any of these reasons to impose the upper term (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12; *People v. Bowen* (1992) 11 Cal.App.4th 102, 106), it did not expressly state that it was doing so.

request to impose no more than the low term, the court further observed that not only had defendant taken advantage of a position of trust, but she also had admitted to a detective that she was also involved in the second plan (to tie up the victims). And the court reiterated that there had been the loss of two lives.

## DISCUSSION

### I. Imposition of the Upper Term for Robbery

Defendant contends the court abused its discretion in imposing the upper term of nine years. She asserts that the trial court relied on a single factor -- that defendant took advantage of a position of trust in that she was friends with the victims -- and that this factor was outweighed by other circumstances. She asserts the court abused its discretion in imposing the upper term. We find no abuse of discretion.

A trial court's sentencing decision is reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) A single aggravating factor is sufficient to make a defendant eligible for an upper-term sentence. (*People v. Black* (2007) 41 Cal.4th 799, 813.)

Defendant asserts that the trial court cited only one factor in aggravation in giving its reasons for imposing the upper term -- that defendant took advantage of a position of

6

trust. (Rule 4.421(a)(11).) Defendant does not assert that this factor has no application here, but she places little value on it, stating, "[t]here is nothing to suggest the relationships were more than casual friends," they were not romantically involved and there was no fiduciary relationship. From this, defendant argues, "the violation of trust was not as great as it could have been."

The aggravating factor that a defendant violated a position of trust focuses on a defendant's special status vis-à-vis the victim and the exploitation of trust or confidence. (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1694-1695, disapproved on other grounds in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123.) As we have noted, the trial court observed that defendant "*took advantage of a position of trust*. She was friends with the victims and *introduced and set up the initial meeting* to purchase marijuana. *As a result of her involvement and the information she subsequently provided*, *the victims were shot to death . . . .*" As can be seen by the italicized portion of the trial court's statement of reasons, the trial court recognized it was defendant's friendship with the victims, and the information she provided about them, that led to their deaths. The information "subsequently provided" (after the initial meeting) was that the victims were "good fighters," that they had firearms, and that the firearms would be in the trailer.

In addition to finding defendant had taken advantage of a position of trust by providing information she obtained as a result of her relationship with the victims, the court also cited other factors in aggravation in the italicized portion of its reasons. The court cited the loss of life (an aggravating factor within rule 4.421(a)(1)), and that there were two lives lost (an aggravating factor within rule 4.408(a), other criteria reasonably related to the sentencing decision). The court also cited defendant's involvement in the second plan. (Rule 4.421(a)(8).) Defendant's assertion that the court cited only one aggravating factor is belied by the record.

In her reply brief, defendant asserts that the trial court's reference to the loss of two lives "applies to the court's reasoning for not selecting the low term. It has no

7

bearing on why it chose the upper term." Defendant lifts the court's comments out of context and ignores the court's reasons, which we italicized, *ante*, for imposing its intended sentence.

Reading the court's comments in context, we note defense counsel suggested that defendant's possession of the firearm, the basis for the probation violation, was not as serious as finding a gun under the seat of a car or in a house. He argued, ". . . I don't think it rises to the level of sentencing this young lady to prison. I think she should be reinstated. And, albeit, I don't believe that she should receive the upper term for this violation." I think the Court should consider [the] lower term." To this the court responded that the probation violation was not a "technical violation." The court stated, "There is no reason that you would try to learn how to shoot a gun if you didn't intend to shoot a gun. *And when you think of the ultimate outcome, the loss of two lives, the lower term does not seem warranted*." (Italics added.)

Thus, it is clear the court's comments were in response to defense counsel's alternative request of a low-term sentence. Having previously stated that its intended sentence, including selecting the upper term for robbery as the base term, was based in part on the fact that "[a]s a result of her involvement and the information she subsequently provided, *the victims were shot to death*," it is equally clear that the court factored the loss of two lives into its upper-term sentencing choice.

As to defendant's purported offsetting mitigating circumstances, in addition to her view that the probation violation was not serious, she cites the following: She had no prior criminal record; both the prosecutor and the court commented favorably at the initial sentencing hearing regarding her thorough cooperation with law enforcement; since nothing was taken, it appears the offense was attempted robbery rather than robbery; and she had been crime free for more than four years when the violation was discovered. Aside from defendant's having no prior convictions, for reasons we shall

8

discuss, the other factors she cites either do not weigh into the calculus for determining the base term sentence or are entitled to little weight.

While events and conduct occurring during probation may be considered in determining whether to reinstate a defendant on probation and whether to run state prison sentences consecutively or concurrently, such events or conduct may not be considered in determining the base term. (Rule 4.435;[4] *People v. Leroy* (1984) 155 Cal.App.3d 602, 605-606 [court may determine postprobation conduct in determining whether to impose consecutive or concurrent sentences]; *People v. White* (1982) 133 Cal.App.3d 677, 681 [court must consider postprobation events to determine whether the defendant should be reinstated on probation or incarcerated].) Thus, defendant's claim that her probation violation was not as serious "as it could have been" is not a mitigating factor to be considered in determining the base term. Even if it could be considered, it would be of little aid to her, because it still shows her willingness to violate a condition of her probation by committing another felony offense. And the felony offense she committed, which was blatantly displayed on the Internet, involved possession of a firearm -- the same type of instrument that took the lives of the two victims here. Moreover, as the trial court noted, she had no legitimate reason to learn how to aim and shoot a firearm if she had no intent to possess one.

Defendant sees mitigation in remaining crime free during the four years before the violation of probation. While the court was free to consider that defendant was crime free between the time she entered her plea on June 2, 2006 and the grant of probation on May 20, 2009, rule 4.435 precludes consideration of her conduct after the grant of

---

[4] Rule 4.435 provides in pertinent part: "(b) On revocation and termination of probation under section 1203.2, when the sentencing judge determines that the defendant will be committed to prison: [¶] (1) . . . [¶] The length of the sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term . . . ."

probation for purposes of determining the base term. However, that defendant remained crime free during her period of cooperation with the prosecution is entitled to little weight, as she was motivated during that time period to achieve the benefit of her bargain and avoid exposure to two life terms for murder. And even if the entire four years could be properly considered, we would likely view that period as a rather short lapse of time, constituting an aggravating factor. After all, it had *only* been four years since she hatched the idea to commit a theft that resulted in the death of two people, and only 16 months after she was formally placed on probation.

As for defendant's cooperation prior to her grant of probation, defendant received the benefit of her agreement. Where, as here, a defendant's cooperation with law enforcement was the product of a plea bargain whereby she obtained the dismissal of two counts of murder, her cooperation is not a mitigating factor. (See *People v. Burg* (1981) 120 Cal.App.3d 304, 306-307 [a guilty plea resulting from a plea bargain is not a sufficient acknowledgment of guilt to constitute a mitigating factor since the admission is only to receive a benefit from the prosecution].)

That the offense may actually only have been attempted robbery because nothing in the record shows that anything was taken is a distinction with no difference. Not only is the claim contrary to defendant's plea, which admitted the offense was a robbery,[5] but even if nothing was taken, that fact is in no way attributable to defendant. It was the resistance by the victims that prevented a completed robbery.

In sum, the court cited multiple aggravating factors. Any one of those factors clearly outweighed the mitigating factors that could be considered, including the fact that defendant had no prior convictions.

---

[5] A defendant may not challenge on appeal the factual basis for his or her entry of a plea. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1365-1366.)

10

Finally, defendant contends if probation was granted initially, it does not follow that defendant should now receive the upper term of nine years. Defendant asserts that the imposition of the upper term, when her original sentence was probation "renders the sentence hugely disproportionate to the facts of the case" and was "grossly unfair under the circumstances." In making this argument, defendant overlooks three circumstances. First, the bar was set low in this case by the plea agreement. Defendant was initially granted probation for her agreement to testify truthfully, and for no other reason. Second, defendant was originally exposed to indeterminate life sentences for the deaths of two people, and as part of her bargain, she agreed that her maximum exposure would be limited to 12 years. Third, section 1203.2, subdivision (c) expressly provides that, "[u]pon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time *within the longest period for which the person might have been sentenced*." (Italics added.) Thus, the statutory scheme contemplates the potential for long sentences after revocation of probation.

Given the totality of the circumstances, there was no abuse of discretion by the court in imposing the upper term for the robbery.

## II. Imposition of Consecutive Sentences

Defendant contends reversal of the consecutive term of two years for the conspiracy conviction is required for three reasons. First, the court failed to state any factor for imposing the consecutive term. Second, if this court finds the trial court did state such a factor, it must have been only that defendant had taken advantage of a position of trust, which constitutes a prohibited dual use of that factor. Third, if this court concludes defendant's failure to object to the foregoing errors forfeited the issue for appellate review, then she received ineffective assistance of counsel.

We conclude that defendant has forfeited the first two claims. In *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), our high court stated, "We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its

11

discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Scott*, *supra*, 9 Cal.4th at p. 353.) Here, defendant did not object on the ground that the trial court failed to specifically state any reason for imposing a consecutive sentence, or on a dual use of fact ground. Consequently, the issue is forfeited.

Defendant claims that defense counsel preserved these contentions. She points out that in her statement of mitigation, which the trial court stated it had read and considered, she argued that the probation officer's statement that consecutive sentencing was proper because the crimes were committed at different times and separate places (rule 4.425(a)(3)) was not factually accurate and should have alerted the court that it was required to state reasons for imposing a consecutive term.

We disagree. "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Scott*, *supra*, 9 Cal.4th at p. 353.) Thus, it was defendant's burden to point out to the court at the time of sentencing that it had not stated any reason for imposition of a consecutive term on the conspiracy sentence or that it had double-counted factors. The court could have corrected the error then.[6] Therefore, defendant may not raise the issue for the first time on appeal.

---

[6] On January 20, 2012, the People filed a motion to augment the record with the trial court's minute order denying defendant's petition for modification of sentence, which the

12

As to defendant's claim that failure to object results in constitutionally ineffective assistance of counsel, we disagree. To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692 [80 L.Ed.2d 674] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 (*Ledesma*).) " 'Surmounting *Strickland's* high bar is never an easy task.' [Citation.]" (*Harrington v. Richter* (2011) ___ U.S. ___ [178 L.Ed.2d 624, 642 (*Richter*), quoting *Padilla v. Kentucky* (2010) 599 U.S. ___, ___ [176 L.Ed.2d 284, 297].)

We follow our high court's direction, " 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.) To show prejudice, a defendant must show a reasonable probability that he would have received a more

trial court filed over a month after defendant filed her notice of appeal. Although not necessary for our disposition of this matter, we grant the People's motion to augment the record with the court's minute order.

In its order, the court wrote, "[D]efendant seeks a concurrent sentence as to Count 4, a violation of Penal Code section 182. The Court continues to find that based upon California Rule[s] of Court, Rule 4.425(a)(3) [the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior], the crime of robbery of an inhabited dwelling in concert with two or more persons (Count 3) and the crime of conspiracy to commit robbery of an inhabited dwelling in concert with two or more persons (Count 4) occurred at different times and locations. The robbery of an inhabited dwelling in concert with two or more person occurred at Olivehurst, California on or about September 27, 2005. The conspiracy to commit robbery of an inhabited dwelling in concert with two or more persons began in early September 2005 in the Sacramento, California area. . . . In view of the Court's sentencing objectives and Rule 4.425(a)(3), the Court continues to finds [*sic*] that the consecutive sentence of one-third of the middle term of six years, namely 2 years is warranted for the subordinate term, a felony violation of Penal Code section 182." While the trial court indicates it "continues to" make the above findings, the court never articulated that finding on the record during the sentencing hearing.

favorable result had counsel's performance not been deficient. (*Strickland, supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, 466 U.S. at p. 694; accord, *Ledesma, supra*, 43 Cal.3d at p. 218.)

Rule 4.425(b) provides that "[a]ny circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences," except a fact used to impose the upper term, a fact used to otherwise enhance the defendant's prison sentence, and a fact that is an element of the crime. As we have noted, any one of the aggravating factors identified by the trial court was sufficient to justify imposition of the upper term. For example, assuming that in selecting the upper term the court used the factor that defendant took advantage of a position of trust in the way it described when it gave its reasons for imposing the upper term, the following factors remain available for use in imposing a consecutive sentence. Not only did the robbery involve great violence (rule 4.421(a)(1)), but people were killed. Thus, the robbery was distinctly worse than the customary robbery. (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562 (*Castorena*) [where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence and the trial court is not precluded from using facts to aggravate a sentence when those facts *establish elements not required* for the underlying crime].) Moreover, the fact that there is more than one victim is a proper factor for imposition of upper term or consecutive sentences. (*People v Calhoun* (2007) 40 Cal.4th 398, 405-408, citing rule 4.408(a).)

Defendant's participation in the way the crime was carried out shows planning and sophistication (rule 4.421(a)(8)). In addition, she induced others to participate in the commission of the crime and occupied a position of leadership in its commission (rule 4.421(a)(4)). Defendant's contention that consideration of the use of the planning factor violates the dual use rule because planning is an element of the conspiracy

14

unavailing. Even assuming planning is an element of conspiracy,[7] in making a sentencing choice the court may consider the totality of a defendant's involvement in the crime. (Rule 4.421(a)(4); *Castorena*, *supra*, 51 Cal.App.4th at p. 562.) Defendant was more than a follower. She originated the idea of committing a theft of marijuana from the victims who were killed.[8] Moreover, the object of the theft was a suspected large quantity of contraband that was to be sold and defendant was to share in the proceeds. (Rule 4.408(a); see rule 4.421(a)(10).)[9] Lastly, we observe that the victims' family dog

---

[7] Strictly speaking, planning is not an element of conspiracy. "A conviction for conspiracy requires proof of four elements: (1) an agreement between two or more people, (2) who have the specific intent to agree or conspire to commit an offense, (3) the specific intent to commit that offense, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy. [Citations.]" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024 (*Vu*).) Nor does the prosecution have to show sophistication as an element of conspiracy. Yet, the original plan conceived by defendant showed just that.

[8] While the trial court discussed defendant's involvement in the crime in the context of denying probation (see fn. 3, *ante*) and in later describing how she took advantage of a position of trust, the court did not expressly mention as aggravating circumstances for imposing the upper term that defendant conceived the idea of stealing the marijuana from the victims, presented that idea to the coconspirators, and did nothing to stop the commission of the crimes.

The other aspects of defendant's involvement the court expressly mentioned it considered in connection with the position of trust factor could have been considered under rule 4.421(a)(4) as circumstances showing her leadership in the crime or as separate factors relevant to the sentencing decision under rule 4.408(a). These included the following: defendant took the other coconspirators to the location, actively participated in the first attempt to steal the marijuana by luring one of the victims away from the premises, and provided the coconspirators with information concerning the victims' ability to resist, including the fact that the victims had firearms and the location where they kept those firearms. As the court appears to have considered these facts under the position of trust factor, they cannot be used again as a reason for consecutive sentences.

[9] Under rule 4.421(a)(10), it is an aggravating factor when the crime involves a "large quantity of contraband." The record is not clear on the size of the crop defendant and her

was shot, a violation of section 597, subdivisions (a) and (d) and a fact that could be considered an aggravating factor under rule 4.421(a)(1), facts related to the crime, whether or not charged, that involved "a high degree of cruelty, viciousness, or callousness." Because these factors would all be available to the court upon resentencing,[10] there is no reasonable likelihood defendant would obtain a more favorable outcome. Hence, defendant cannot establish prejudice.

## DISPOSITION

The judgment is affirmed.

                                                           MURRAY            , J.

We concur:

                    RAYE              , P. J.

                    DUARTE            , J.

---

crime partners sought to steal, but we must assume the conspirators thought it large enough that they could make money from selling it. Even assuming the crop did not qualify as particularly large, that defendant suggested stealing a controlled substance knowing that the purpose was to resell it and that she planned to personally share in the proceeds are facts reasonably related to the sentencing decision under rule 4.408(a).

[10] We need not decide whether the court was justified in determining that the robbery and conspiracy were committed at different times and places, because that reason was only stated by the trial court in its order denying defendant's motion to modify the sentence after defendant's notice of appeal was filed. We do note that conspiracy is an ongoing going crime (*Vu*, *supra*, 143 Cal.App.4th at p. 1024), so a conspiracy may take place in locations other than where the agreement is reached.