[No. G017176. Fourth Dist., Div. Three. Dec. 6, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
RENE CASTORENA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b), parts II and III of this opinion are not published, as they do not meet the standards for publication.

## COUNSEL

Michael Linfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—Rene Castorena was convicted of gross vehicular manslaughter while intoxicated. On appeal he contends the court erred in finding

he knowingly waived his *Miranda*[1] rights, instructing the jury and sentencing him to the upper term.

## I

After Castorena and several of his coworkers consumed four to five pitchers of beer over a period of several hours, Castorena drove to Edgar Hernandez's house, where he drank four glasses of brandy with his friend Sergio. Deciding to go home, he tried to exit the house through a window, apparently mistaking it for the front door. Hernandez, concerned about Castorena's level of intoxication, asked for his car keys. Sergio told Castorena he should not drive and offered to give him a ride. Castorena agreed initially and, giving his keys to Hernandez, walked to Sergio's car. However, he returned to the house, explaining he needed to drive his sister-in-law to work early the next morning. After Hernandez returned his keys, Castorena left the house, only to return within a few minutes. He again changed his mind, took his keys and drove away.

Traveling 70 to 100 miles per hour, often on the wrong side of the road, Castorena ran several red lights. Ultimately he rear-ended a car, injuring the driver and killing a passenger. Castorena was rendered unconscious and sustained serious facial injuries. The police took him to the hospital where two days later Police Officer Steven Ramsey interviewed him. Although Castorena was in a surgical ward, a nurse assured Ramsey he was "awake, alert and spoke perfect English." After being advised of his *Miranda* rights,[2] Castorena admitted drinking beer with his coworkers, but denied being

---

[1] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[2] Ramsey taped the *Miranda* advisory by placing a recorder on a table at the foot of Castorena's bed. The transcript of the recording, prepared by Ramsey with his edits shown in parentheses, reads as follows:

"[Ramsey]: Okay this is Monday, March 28, 1994, at approximately 1057 hours. This is an interview with Rene Castorena at UCI MC, in the surgical ward. Rene, you have the right to remain silent, do you understand that?

"[Castorena]: Uh?

"[Ramsey]: You have the right to remain silent, do you understand?

"[Castorena]: Yes.

"[Ramsey]: Anything you say may be used against you in court, do you understand that?

"[Castorena]: (Inaudible) (Castorena whispers "yes" and nods head in an affirmative manner.)

"[Ramsey]: You have the right to an attorney before and during any questioning, do you understand that?

"[Castorena]: (Inaudible) (Castorena nods head in affirmative manner.)

"[Ramsey]: Yes?

"[Castorena]: (Inaudible) (Castorena whispers "yes" and nods head in an affirmative manner.)

intoxicated. He explained he did not become drunk until he consumed brandy at Hernandez's house. He could not remember leaving the house or anything about the accident.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

After denying probation, the court stated, "The circumstances in aggravation, California Rules of Court, [rule 421] (a)(1) and (8),[7] malice for the conscious disregard of the rights and safety of others which is not an element of this crime exists in this instance. [¶] The evidence clearly demonstrated the defendant was malicious in his conduct and that such conduct involved planning. . . . After having been told he was too drunk to drive, after having his keys taken away and after being offered another means of transportation, defendant drove anyway, apparently because he would have been inconvenienced [because he needed to have his keys to drive to work the next day]. [¶] In addition, . . . the evidence demonstrated that the defendant in his driving was attempting to avoid detection. Also, while an element of this crime is gross negligence, defendant's conduct exceeded even the word gross. While at almost three times the legal limit of blood alcohol[,] it was .20, as I recall, he drove at speeds up to 100 miles an hour on the wrong side of the road running several red lights and narrowly missing injury to several other persons after having consumed 10 to 12 glasses of beer and 4 glasses of brandy. . . . [¶] . . . [¶] Because of the gravity and weight of the

---

"[Ramsey]: If you cannot afford an attorney, one will be appointed for you before questioning. Do you understand that?

"[Castorena]: (Inaudible) (Castorena whispers "yes" and nods head in an affirmative manner.)

"[Ramsey]: Yes?

"[Castorena]: (Inaudible) (Castorena nods head in an affirmative manner.)

"[Ramsey]: Can we talk about what happened now?

"[Castorena]: (Inaudible) (Castorena whispers "yes" and nods head in affirmative manner.)"

*See footnote, *ante,* page 558.

[7]Rule 421, provides in part: "Circumstances in aggravation include: [¶] (a) Facts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that: [¶] (1) The crime involved great violence, great bodily harm, threat of great bodily injury, or other acts disclosing a high degree of cruelty, viciousness, or callousness. [¶] . . . [¶] (8) The manner in which the crime was carried out indicates planning, sophistication or professionalism." All further rule references are to the California Rules of Court.

aggravating factors, defendant is sentenced to the upper term of 10 years in state prison."[8]

■ Castorena maintains the court improperly relied on the same facts the jury used to convict him of gross negligence. He argues because gross negligence is established from all "relevant aspects of [a] defendant's conduct resulting in the fatal accident" (*People* v. *Bennett* (1991) 54 Cal.3d 1032, 1039 [2 Cal.Rptr.2d 8, 819 P.2d 849]) there were no remaining facts for the court to use to aggravate his sentence. For reasons we now explain, he is wrong.

Rule 420(d) provides, "A fact that is an element of the crime shall not be used to impose the upper term." However, where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence. (See *People* v. *Garcia* (1995) 32 Cal.App.4th 1756, 1775-1776 [39 Cal.Rptr.2d 73], and cases cited therein.) Stated another way, rule 420(d) does not preclude a court from using facts to aggravate a sentence when those facts *establish elements not required* for the underlying crime.

Here, the trial court, recognizing the dual use proscription, relied on facts exceeding those necessary to establish gross negligence. It determined "while an element of this crime is gross negligence, defendant's conduct exceeded even the word gross." The court found such evidence demonstrated *implied malice which is an element of second degree murder—not gross vehicular manslaughter while intoxicated.*[9] (*People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279] [implied malice, a necessary element of second degree murder, "contemplates a subjective awareness of a higher degree of risk" not required for gross negligence].)[10]

---

[8]The court also stated, "while the defendant claims he has no history of criminal conduct and indeed even this morning claims responsible behavior in that he was gainfully employed and claims not to have been a regular heavy drinker, and indeed there is no official record of criminal conduct, the People and the victim's father point out the lack of an official criminal record is belied by the fact the defendant was violating several laws at the time of the incident. [¶] In addition to those for which he was convicted, he is in the country illegally, he was driving without insurance and he was a[n] under-age drinker."

[9]We note Castorena was not charged with second degree murder and therefore, implied malice was never considered by the jury. Thus, we do not address the question of whether a court can aggravate a sentence based on a finding of malice in a case where a jury has acquitted the defendant of murder. Our holding is limited to the facts of this case.

[10]We need not determine whether the court's finding of "planning" as an aggravated factor was appropriate in this case. "A single factor in aggravation will support imposition of an upper term. . . . '[Indeed, in circumstances where] a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable *that the* trial court would have chosen a lesser sentence had it known

To accept Castorena's contention would impermissibly limit trial courts from imposing an aggravated term in gross vehicular manslaughter cases. Such a result was never intended by the Legislature: "The determinate sentencing law authorizes the court to select the [lower, middle or upper] prison term . . . . [¶] . . . if circumstances justify that choice appear upon an evaluation of the record as a whole." (See Advisory Com. com. to rule 420(d) 23 West's Ann. Court Rules, pt. 2 (1996 ed.) p. 17; see also *People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134] [statutes should be interpreted to avoid results not intended by the Legislature].) Accordingly, we find no error in sentencing.

The judgment is affirmed.

Crosby, Acting P. J., and Wallin, J., concurred.

---

that some of its reasons were improper.'" (*People* v. *Cruz* (1995) 38 Cal.App.4th 427, 433-434 [45 Cal.Rptr.2d 148], citation omitted.) As shown by the record, such is not the case here.