Filed 11/5/13  P. v. Scott CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

**THE PEOPLE,**

    **Plaintiff and Respondent,**              **A137653**

    **v.**                                   **(Solano County**
                                            **Super. Ct. No. FCR285146)**

**TYLER NEAL SCOTT,**

    **Defendant and Appellant.**
_____/

Tyler Neal Scott (defendant) killed a man in a car accident while driving drunk. He pled guilty to gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a) (Count 2))[1] and driving while intoxicated causing injury (Veh. Code, § 23153, subd. (a) (Count 3)).  The court sentenced him to the upper term of 10 years in state

---

[1]    Unless otherwise noted, all further statutory references are to the Penal Code. "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence."  (§ 191.5, subd. (a).)

1

prison on Count 2 and the midterm of two years in prison on Count 3, to run concurrently with the sentence on Count 2.

Defendant appeals. He contends the court improperly imposed the upper term on Count 2 by relying on "improper aggravating factors." He also makes an ineffective assistance of counsel argument based on trial counsel's failure to object to the sentence in the trial court.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2011, the 22-year-old defendant was a member of the United States Air Force and worked at Travis Air Force Base. He signed a "'DUI contract' with the Travis Air Force Base" outlining "the dangers of drinking and driving and indicat[ing] . . . he could face a lengthy prison sentence if he killed someone" while driving under the influence of alcohol. He also "participated in alcohol counseling as a result of a reprimand he received stemming from an underage alcohol incident."

At a friend's afternoon graduation party, defendant drank "multiple beers, mixed drinks of Captain Morgan and coke and shots of hard alcohol . . . while playing beer pong and sitting in the hot tub."[2] Defendant left his friend's house "and drove westbound on Cement Hill Road at a high rate of speed trying to catch up to some friends who had left just before he did. Passenger [ ] J.W. was sitting in the front passenger seat of the defendant's vehicle and asked the defendant to slow down. The defendant ignored this request and continued driving at a high rate of speed." At the same time, another driver, G.S., was traveling eastbound on Cement Hill Road; another car, driven by A.L.L., followed G.S.'s car. "The defendant was driving in excess of 50 mph and began to 'drift' into the eastbound lane, crossing the double yellow lines. The left front of the defendant's vehicle struck the left front of [ ] G.S.'s vehicle. This collision caused major damage to the left side of G.S.'s vehicle and left tire marks going over the left portion of the roof of G.S.'s vehicle."

---

[2]     The facts regarding the incident are taken from the probation report.

2

"[T]he defendant's vehicle spun in a counter-clockwise direction and the right rear of his vehicle struck the front" of A.L.L.'s car, pushing it backwards and onto the curb. The force of the first collision caused "unrestrained passenger in [defendant's car], J.W., to be fully ejected through the open passenger door window onto the roadway surface." J.W., however, only "sustained minor abrasions as a result" but "G.S. was ejected onto the roadway. . . . The collision severed [his] seatbelt and ripped the driver door backwards. [G.S] was found on the roadway surface face down . . . [and] was later pronounced deceased . . . ." At the time of the accident, G.S. — who was married with five children and numerous grandchildren — was "returning home from his job as an armed security officer." G.S. had served in three different branches of the United States military and had previously worked as a police officer.

The defendant, J.W., A.L.L., and the passenger in A.L.L.'s car sustained minor injuries. The defendant was transported to the hospital "due to losing consciousness as a result of the collision." The police questioned defendant at the hospital. "He initially told police he drank alcohol much earlier on the day of the incident. When the officer noted to the defendant that he could smell alcohol on the defendant's person, the defendant changed his statement. The defendant then said he had consumed 'a couple of 12 oz. beers' earlier in the day prior to attending a graduation at Solano Community College.

"The defendant then said he had been drinking vodka and whiskey between 10:00 a.m. and 2:00 p.m. on this date and insisted he had not had any alcohol after that time. As the defendant showed objective sings of alcohol intoxication, a PAS [preliminary alcohol screening] test was administered with a result of .15 BAC [blood alcohol concentration]. The defendant was questioned about the collision. The defendant then said, 'I knew this was going to happen. I knew someone was going to run into me and that I was going to get blamed for it.'" The police arrested defendant. A blood test showed the defendant to have a blood alcohol level of .20.

The People charged defendant with murder (§ 187, subd. (a) (Count 1)), gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a) (Count 2)), driving while

3

intoxicated causing injury (Veh. Code, § 23153, subd. (a) (Count 3)), and driving with .08% blood alcohol causing injury (Veh. Code, § 23153, subd. (b) (Count 4)). As to Counts 3 and 4, the People alleged defendant caused bodily injury and death, and that appellant had a blood alcohol level of .15 percent and higher (Veh. Code, §§ 23558, 23578). On the second day of trial, defendant pled guilty to gross vehicular manslaughter while intoxicated (§ 191.5 (Count 2)) and driving while intoxicated causing injury (Veh. Code, § 23153, subd. (a) (Count 3)). Pursuant to the plea agreement, defendant's maximum punishment was 11 years.

The probation report recommended denying probation and sentencing defendant to the six-year middle term. In his statement of mitigation and statement in support of probation, defendant argued: (1) he was eligible for probation; (2) there were no aggravating factors as set forth in California Rules of Court, rule 4.421(a) and (b);[3] and (3) various mitigating factors — such as his alcoholism "compounded by his experience in Iraq" and his offer to "plead guilty to involuntary manslaughter at an early stage of the proceedings" — applied. (Rule 4.423.) Defendant urged the trial court to impose the middle term if it declined to grant probation.

The People urged the court to impose a 10-year, 8-month prison sentence. They argued the crime involved "'a high degree of cruelty, viciousness, or *callousness*'" pursuant to Rule 4.421(a)(1) because defendant was aware of the dangers of driving while intoxicated "and yet he still chose to consume a high amount of alcohol and drive. Unlike most other employers, the Air Force went to great lengths to prevent Defendant from committing this offense. He chose to disregard completely the training and counseling and the contract he signed, knowing full well the risks associated with his action. Defendant's indifferent demeanor towards others he would share the road with is a high degree of callousness and thus the imposition of the upper term is appropriate."

---

[3]     California Rules of Court, rule 4.421 sets forth the factors the court is to consider when deciding whether to apply an aggravated term. All further "rule" references are to the California Rules of Court.

At the sentencing hearing, the court indicated it had read the probation report and attached documents, defendant's statement in mitigation and his statement in support of probation and the supporting documents, and the People's sentencing brief. The court struck one of the letters attached to the probation report. After hearing statements from the victims and argument from counsel, the court denied probation and imposed the upper term of 10 years on Count 2. It explained, "I've reviewed both the mitigation—and there's a lot of mitigation in this case. There's also a lot of aggravation in this case. And the Court finds that the aggravating factors outweigh the mitigating factors.

"Taking a look at Rule 4.421, the Court notes that—I realize now, as he sits here today in a clear frame of mind, he appears to be remorseful, and I think he is remorseful. However, one of the rules is whether or not there was an attempt to mislead law enforcement. And early on, he made the following comment—it was contained in the probation report, and I heard it at the preliminary hearing, quote, I knew this was going to happen. I knew someone was going to run into me, and I was going to get blamed for it. I think that tells you a lot about what was going on in his mind when this was occurring, and it causes the Court great concern about the other important issue that a judge looks at in sentencing, and that is, protecting the public."

"Pursuant to Rule . . . 4.421 subparagraph (7), Count 2 the Court is going to run concurrent and, therefore, the sentence for the violation of . . . section 191.5 is ten years as the aggravated sentence. [¶] The Court—one reason the Court chooses that aggravated term is not only to protect the public, but also to give Mr. Scott enough time in state prison to fully understand what he's done, fully understand how he needs to change his life, and to assume his responsibilities once again when he's on parole, and to do things in society that he knew he should have done then. . . . [¶] The military, the United States Air Force — [ ] have gone out of their way to dissuade and to educate their members not to commit these types of acts. He was well-aware of that, and he chose to ignore that. [¶] So for the violation of Vehicle Code section 23153, subdivision (a), the Court will run a concurrent sentence of two years."

5

To forestall an ineffective assistance of counsel claim, we address the merits of appellant's claim notwithstanding trial counsel's failure to object to the sentence in the trial court. (*People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151; *People v. Scott* (1994) 9 Cal.4th 331, 354-355 [challenges to discretionary sentencing choices forfeited on appeal if not raised in the trial court].)

Pursuant to section 1170, a trial court is "required to specify reasons for its sentencing decision[.]" (*People v. Sandoval* (2007) 41 Cal.4th 825, 846-847 (*Sandoval*); § 1170, subds. (b), (c).) The court, however, is not required to "cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances." (*Sandoval, supra,* 41 Cal.4th at p. 847.) "The trial court has broad discretion with regard to sentencing, and its decision will be affirmed on appeal, so long as it is not arbitrary or irrational and is supported by any reasonable inferences from the record. [Citation.] The party attacking the sentence must show the sentencing decision was irrational or arbitrary and if it fails to do so, "'the trial court is presumed to have acted to achieve legitimate sentencing objectives. . . .'" [Citation.]" (*People v. King* (2010) 183 Cal.App.4th 1281, 1323; *Sandoval, supra,* 41 Cal.4th at p. 847.) While a "trial court is required to state its reasons for any sentencing choice (e.g., imposition of an upper term) on the record at the time of sentencing" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371 (*Ortiz*)), a "trial court may 'minimize or even entirely disregard mitigating factors without stating its reasons.'" (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258, quoting *People v. Salazar* (1983) 144 Cal.App.3d 799, 813.) A single "aggravating factor is sufficient to support the imposition of an upper term." (*Ortiz, supra,* 208 Cal.App.4th at p. 1371.)

Here, the court relied on several aggravating factors, including that defendant knew of the dangers of drinking and driving and decided to engage in a dangerous and violent activity. There is substantial evidence to support the court's decision to impose the upper term based on Rule 4.421(a)(1), which identifies a circumstance in aggravation as when "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." We

conclude these particular crimes evidenced "a high degree of . . . . callousness." (Rule 4.421(a)(1).) First, defendant was well aware of the dangers of driving while intoxicated because he signed a DUI contract with his employer, the United States Air Force, outlining "the dangers of drinking and driving and indicat[ing] . . . he could face a lengthy prison sentence if he killed someone" while driving under the influence. He also "participated in alcohol counseling as a result of a reprimand he received stemming from an underage alcohol incident." Moreover, defendant's statement to police after the accident that he "knew this was going to happen[,]" suggests he was aware of the dangers of drunk driving and still chose to drive after consuming a large amount of alcohol.

Second — and in apparent disregard of his knowledge of the disastrous consequences of driving while intoxicated — defendant consumed a significant amount of alcohol sufficient to raise his blood alcohol level to more than twice the legal limit. He then took the wheel, driving at a high rate of speed in a manner virtually calculated to cause a severe accident. He declined his passenger's request to slow down. He drove in the oncoming traffic lane during a time when early evening traffic was on the road, creating a strong likelihood the accident would cause serious injury. (See *People v. Castorena* (1996) 51 Cal.App.4th 558, 562-563 [particularly egregious drunk driving can support aggravated term for gross vehicular manslaughter].) Here, the trial court did not abuse its discretion in concluding sufficiently egregious circumstances were present to constitute a factor in aggravation. Defendant's conduct was distinctly more egregious than the "ordinary" offense of vehicular manslaughter with gross negligence while intoxicated and was "deserving of punishment more severe than that merited for other offenders in the same category[.]" (*People v. Black* (2007) 41 Cal.4th 799, 817.)

We reject defendant's argument that the trial court could not rely on the danger he presents to society as an aggravating factor. (Rule 4.408 [court may rely on "additional criteria reasonably related to the decision being made" to impose the upper term].) A September 2012 "psychological report" offered in support of defendant's mitigation statement notes defendant "was not aware that he was alcohol dependent at the time of the instant offense, and only recently realized the severity of his alcohol problem." The

7

December 2012 probation report, however, notes defendant "admits to having an alcohol abuse problem and also reports that, despite the severity of the instant offenses, he consumed alcohol after committing the [ ] offenses[.]" From this evidence, it was reasonable to infer there was a significant risk the same or similar conduct would be repeated the next time defendant had an opportunity to drink and drive, presenting a serious danger to society. Defendant represented a danger to society when he stepped into his car the day of the accident. Given his alcohol dependence and his continued drinking, he presented precisely the same danger at the time of sentencing. The trial court did not abuse its discretion in treating this threat as a factor in aggravation. (Rule 4.408(a).)

We are not persuaded by defendant's claim that the factors relied upon by the court were "too vague and editorial[.]" Rule 4.408(a) allows the sentencing court to use as aggravating factors "additional criteria reasonably related to the decision being made." That defendant disagrees with the applicability of the aggravating factors does not demonstrate they were improper or that they were unrelated to the sentencing decision. Moreover, even if the trial court erred in considering one or more particular circumstances at sentencing, we would not reverse. "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492.) We are confident that given the seriousness of the crimes, the trial court would not have selected a lesser sentence even if we declared improper some of the aggravating circumstances defendant has contested.

## DISPOSITION

The judgment is affirmed.

8

                                          _____
                                          Jones, P.J.


We concur:


_____
Simons, J.


_____
Bruiniers, J.