Filed 4/26/16  P. v. Valentine CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MICHAEL LEE VALENTINE,<br><br>     Defendant and Appellant. | F069751<br><br>(Super. Ct. No. F11902713)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Don Penner, Judge.

Elizabeth M. Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Detjen, J. and Peña, J.

Appellant Michael Lee Valentine pled no contest to gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)). On appeal, he contends the court committed sentencing error. We affirm.

## FACTS

On May 13, 2011, Sara Stilwell drove Michaela Agabashian to pick up Valentine outside a comedy club in Fresno. Stilwell asked Valentine to drive her car. He drove to a parking lot where they all smoked marijuana. Valentine then drove to a liquor store and bought a "big handle of Captain Morgan" rum before driving everyone to his house.

While Stilwell got ready in the bathroom, Valentine sat with Agabashian at a table drinking. Valentine's mother allowed Stilwell to drink at the house because Stilwell lied about her age. She did not allow Agabashian to drink because Agabashian told her that she was only 19 years old. Valentine's mother also lectured the trio on the dangers of drinking and driving and told them she was worried they could get in an accident because an acquaintance of hers had a child "in a very similar situation." To allay the concerns of Valentine's parents, Stilwell asked Agabashian if she was going to drive and Agabashian, who did not know how to drive, falsely stated she would so Valentine's parents would think Agabashian, who was not drinking, was the designated driver. However once they were in the car, Agabashian started drinking because everyone "wanted to get drunk that night."

Valentine drove to the Tower District and by that time, he "was already driving kinda crazy." After Valentine parked the car, the trio encountered Tyler Arrow riding his bike and Arrow invited them to a party in Kerman. After the trio agreed to go, Arrow rode his bike to his sister's house, which was "really close" to the Tower District. Valentine drove to pick up Arrow, and drove the group towards Kerman. However, they ended up in the country unable to find the party. During that time Valentine began driving so fast that he frightened Agabashian and she "started crying and freaking out." Valentine's driving also angered Stilwell and she made Valentine stop the car. Everyone

2.

"stumbled" out of the car but eventually they "all stumbled back into the car" and Valentine continued driving.

After locating the party and spending some time there, Valentine began driving back to Fresno with Stilwell seated in the front passenger's seat and Agabashian seated in the back seat. Arrow, who had passed out on a couch, stayed at the party. By that time, they were all "really drunk."

As they headed back to Fresno with Stilwell asleep in the front seat, Valentine began driving at over 100 miles per hour with the radio blaring, which scared Agabashian and she began arguing with him and asking him to slow down. Valentine stopped the car and asked Agabashian what she was yelling about. However, after she kept yelling at him, he started the car and continued driving fast. At 2:30 a.m. Agabashian was talking on her cell phone with Ashley Kerns and passed the phone to Valentine. Kerns asked Valentine to stop driving but he just laughed and handed the phone back to Agabashian. The last thing Agabashian remembered before the crash was seeing a telephone pole in front of them and screaming, "Watch out for that pole[!]" The car then ran off the road at an excessive speed and overturned several times. A blood draw from Valentine obtained within three hours of the accident indicated that his blood alcohol content (BAC) was .16 percent when drawn and that he had marijuana in his system.

Stilwell was not wearing a seatbelt and was ejected from the car. She died on May 28, 2011, from traumatic brain injury. Agabashian survived the accident but broke her mandible and suffered a concussion.

On July 15, 2014, the court sentenced Valentine to prison for the upper term of 10 years. In imposing the upper term the court stated:

> "The court makes a finding that there . . . is a mitigating factor here in that the defendant does not have a significant prior record. There is an indication in the probation report of the wrongful use of marijuana, not too long before that had something to do with his service in the military but the court does make a finding so that the record's clear that there [is a]

3.

mitigating circumstance[] here of an insignificant record. I don't make any other mitigating circumstance findings so that the record's clear, in particular I'm not making a finding of an early stage disposition.

"In aggravation, the court in my opinion, there are three significant aggravating factors. The attempts by the victims in this case to try to persuade the defendant to stop driving in the erratic manner that he drove, the fact that there is another victim that was not pled to, the second victim in this case [Agabashian] who suffered injury, the District Attorney reserved the right to comment on that injury. I find that to be an aggravating factor and then finally the blood alcohol level. . . . Vehicle Code Section 23578[1] specifically tells the court to take into consideration—both for purposes of probation and for aggravation, the fact that a blood alcohol level is a .15 or higher as it was in this particular case. . . . The court also makes a finding that the aggravating circumstances outweigh the one mitigating circumstance in this case."

Defense counsel did not object to any of the aggravating circumstances the court relied on to impose the upper term.

## **DISCUSSION**

Valentine contends the court improperly found aggravating factors based on his elevated BAC and his continued driving after being told to stop by passengers and other people because these circumstances were part of the gross negligence that elevated his manslaughter offense to a more serious offense. Although section 23578[2] allows the court to base an aggravating factor on an elevated BAC, Valentine contends the court erroneously relied on that section to find an aggravating factor because gross vehicular manslaughter is not listed in that section as one of the offenses to which it applies. Valentine also contends these issues have not been forfeited because defense counsel

---

**1** All further statutory references are to the Vehicle Code.

**2** Section 23578 provides: "In addition to any other provision of this code, if a person is convicted of a violation of Section 23152 or 23153, the court shall consider a concentration of alcohol in the person's blood of 0.15 percent or more, by weight, or the refusal of the person to take a chemical test, as a special factor that may justify enhancing the penalties in sentencing, in determining whether to grant probation, and, if probation is granted, in determining additional or enhanced terms and conditions of probation."

objected to "use of several factors underlying gross negligence to impose the upper term." Alternatively, he contends he was denied the effective assistance of counsel if he forfeited this issue by his defense counsel's failure to object to the court's reliance on these factors. Finally, Valentine contends he was prejudiced by the consideration of these factors because the court did not indicate that one of the factors was weighed more heavily than the others and it stated at the onset of the hearing that it was a close call between the middle term and the aggravated term. We conclude Valentine forfeited his challenge to these two aggravating circumstances by his failure to object. Alternatively, we conclude that the court did not abuse it discretion when it relied on the two circumstances at issue to impose the aggravated term and that Valentine was not denied the effective assistance of counsel.

In *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), the Supreme Court held that a criminal defendant who fails to object to a "trial court's failure to properly make or articulate its discretionary sentencing choices" cannot raise the claim for the first time on appeal. (*Id*. at p. 353.) Forfeited challenges are those that "involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*Id*. at p. 354.) The claim that the sentencing court relied on inappropriate factors to impose the aggravated term is a claim that the court "fail[ed] to properly make . . . [a] discretionary sentencing choice[]." (*Id.* at p. 353.) Since Valentine failed to object to the asserted errors in the trial court, under *Scott*, his claim of error is forfeited. (Cf. *People v. Kelley* (1997) 52 Cal.App.4th 568, 581-582 [under *Scott*, the claim that the trial court failed to consider circumstances in mitigation may not be raised for the first time on appeal].)

As previously stated,Valentine contends he did not forfeit this issue because defense counsel objected to the use of several factors "underlying gross negligence" to impose the upper term. We disagree.

Defense counsel challenged the weight the court gave Valentine's failure to heed his passengers' warnings to stop when he argued that although Valentine failed to stop when asked to do so, "those comments were made right before impending danger." However, he did not object to the court finding an aggravating circumstance based on his failure to heed these warnings or argue that it was improper to use it as an aggravating factor because it was one of the facts that supported a finding of gross negligence. Nor did he object to or make any argument against the court considering his elevated BAC as a factor in aggravation. Thus, under *Scott*, Valentine's claim of error is forfeited. However, even if Valentine's claim were properly before us, we would find no error.

Penal Code section 1170 affords a trial court broad discretion in imposing sentence. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citations.]" (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 847.) Absent a clear showing of abuse, a trial court's discretion in sentencing will not be disturbed on appeal. (*People v. Sanchez* (1982) 131 Cal.App.3d 718, 740.) Moreover, a sentencing court is presumed to have acted properly, absent a clear showing that its sentence choice is arbitrary or irrational. (*People v. Hubbell* (1980) 108 Cal.App.3d 253, 260.)

"The statutes and sentencing rules generally require the court to state 'reasons' for its discretionary choices on the record at the time of sentencing. [Citations.]" (*Scott*, *supra*, 9 Cal.4th at p. 349.) "Such reasons must be supported by a preponderance of the evidence in the record and must 'reasonably relat[e]' to the particular sentencing determination. [Citations.]" (*Id.* at pp. 349-350, fn. omitted.) "[I]n assessing factors in aggravation or in mitigation the sentencing court not only may but must examine all of the circumstances of the crime. [Citations.] '[T]he "circumstances" the sentencing judge

6.

may look to in aggravation or in mitigation of the crime include "attendant facts," "the surroundings at the commission of an act." [Citation.] "Circumstances" include "practically everything which has a legitimate bearing" on the matter in issue. [Citations.]' [Citation.]" (*People v. Blade* (1991) 229 Cal.App.3d 1541, 1544.)

As this court has explained, because "[n]either [Penal Code] section 1170 nor the California Rules of Court attempt to provide an inclusive list of aggravating circumstances. . . . a trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made. [Citations.]" (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196.) In this respect, "[t]he essence of 'aggravation' relates to the effect of a particular fact in making the offense distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110.) A single appropriate factor is sufficient to support an aggravated term. (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1759.)

Gross negligence can be shown by the overall circumstances of the defendant's intoxication and the manner in which the defendant drove. (*People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1428.) "[O]ne who drives with a very high level of intoxication is indeed more negligent, more dangerous, and thus more culpable than one who drives near the legal limit of intoxication, just as one who exceeds the speed limit by 50 miles per hour exhibits greater negligence than one who exceeds the speed limit by 5 miles per hour." (*Ibid*.) Gross negligence can also be shown by the failure to heed warnings not to drive intoxicated. (*Ibid*.)

In *People v. Castorena* (1996) 51 Cal.App.4th 558 (*Castorena*), the defendant was convicted of gross vehicular manslaughter and sentenced to the aggravated term. (*Id*. at pp. 559-560.) On appeal, he argued that "because gross negligence is established from all 'relevant aspects of [a] defendant's conduct resulting in the fatal accident' [citation] there were no remaining facts for the court to use to aggravate his sentence." (*Id*. at

p. 562.) In rejecting this contention, the *Castorena* court stated, "[California Rules of Court r]ule 420(d) provides, 'A fact that is an element of the crime shall not be used to impose the upper term.' However, *where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence*. [Citation.]" (*Ibid.*, italics added.)

"It is generally held that mere speed, of itself, does not constitute wil[l]ful misconduct. This may not always be true. There may be a point at which the speed becomes so excessive, the danger of injury to the passenger so probable, that such extreme speed alone might be held to be wil[l]ful misconduct." (*Fisher v. Zimmerman* (1937) 23 Cal.App.2d 696, 701-702.) It follows a fortiori that excessive speed alone may also constitute gross negligence. (*Hallman v. Richards* (1954) 123 Cal.App.2d 274, 278 ["wil[l]ful misconduct means something different from and more than negligence, however gross"].)

The trial court reasonably could have concluded that driving at a speed exceeding 100 miles per hour, as Valentine did before the crash, was sufficient to establish he was grossly negligent. Further, Valentine's elevated BAC, which was at least twice the legal limit when the crash occurred, and his failure to heed warnings not to drive while intoxicated and the passengers' directives to stop each made his conduct " ' "distinctively worse" ' " (*People v. Black* (2007) 41 Cal.4th 799, 817) than if he had just been speeding excessively. Therefore, since the circumstances here "*exceed the minimum necessary to establish the elements of the crime*" (*Castorena*, *supra*, 51 Cal.App.4th at p. 562), the court did not abuse its discretion when it found aggravating circumstances based on these circumstances and imposed the aggravated term.**3**

---

**3**    In view of this conclusion, we need not decide whether section 23578 allowed the court to find an aggravating circumstance based on Valentine's high BAC even though Penal Code section 191.5 is not listed as one of the code sections to which it applies.

"A defendant claiming ineffective assistance of counsel under the federal or state Constitutions must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome. [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 664.)

Had defense counsel objected to the court's use of the two aggravating circumstances Valentine now complains of, his objection would have been overruled because there was no legal basis for such an objection. Further, since defense counsel is not required to make frivolous objections (*People v. Price* (1991) 1 Cal.4th 324, 387) he did not provide ineffective representation by his failure to object to the court's use of these circumstances to impose the aggravated term. Nor was Valentine prejudiced by counsel's failure to object. Accordingly, we reject Valentine's ineffective assistance of counsel claim because he has not shown deficient performance by defense counsel or prejudice.

## **DISPOSITION**

The judgment is affirmed.