Filed 9/5/24  P. v. Salgado CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHN SALGADO,<br><br>    Defendant and Appellant. | G061934<br><br>(Super. Ct. No. 17CF0197)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge. Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald Ostertag and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

John Salgado appeals from a judgment after a jury convicted him of, among other things, two counts of deliberate and premeditated attempted murder and found true enhancement allegations. Salgado argues he received ineffective assistance of counsel and the trial court erred in instructing the jury. Neither contention has merit, and we affirm the judgment.

FACTS[1]

One evening around 9:30 p.m., a 16-year-old male (Son) and his father (Father) were sitting in their idling car waiting for their family in front of their friend's apartment. While they were waiting, Salgado peeked out from behind a truck or a tree and looked at them suspiciously.

Salgado walked toward the front of their car and said to them, "'West Myrtle Motherfuckers,'" or "'Where are you from motherfucker?'" When Salgado was a few feet from the driver's side door, he pulled out a gun.

Son, who was driving Father's car, saw the gun, hit the gas pedal, and drove away. Son and Father heard gunshots, and Father felt a bullet whiz by his head.

Son drove home where they inspected the car. They saw a bullet hole in the rear passenger headrest and exterior driver's side mirror, the rear view mirror was shattered, and the front and rear windshields were damaged.

Police arrived at the scene of the shooting and recovered three nine-millimeter cartridge cases and a partial bullet fragment. The police also

---

[1] Salgado does not challenge the sufficiency of the evidence that established his identity as the shooter. Under established appellate principles, we recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

2

recovered the core of a bullet from the driver's side floorboard of Father's car. The headstamps on the nine-millimeter cartridges read "SIG 9mm LUGER." A firearms expert determined that all the cartridges recovered from the scene were fired by the same firearm. Police found West Myrtle gang indicia at Salgado's house.

A couple of weeks later, police officers observed Salgado get into a car and drive away. As the police were following him, Salgado threw a loaded firearm from the car window, veered to the left, and got out of the moving car. Police apprehended him a short time later. The nine-millimeter rounds in the firearm's magazine had a headstamp of "SIG 9mm LUGER."

A third amended information charged Salgado with the following: two counts of deliberate and premeditated attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a); counts 1 & 2);[2] two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 3 & 4); shooting at an occupied vehicle (§ 246; count 5); two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1); counts 6 & 8); felon carrying a loaded firearm in public (§ 25850, subds. (a) & (c)(1); count 7); and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 9). The information alleged the following enhancement allegations: as to counts 1 and 2, Salgado personally discharged a firearm (§ 12022.53, subd. (c)); with respect to counts 1 through 7, he committed the crimes to benefit a criminal street gang (§ 186.22, subd. (b)(1)); and as to counts 3 and 4, he personally used a firearm (§ 12022.5, subd. (a)). As relevant here, the information also alleged aggravating circumstances pursuant to California Rules of Court, rules 4.421(a)(1) and (b)(1) as to counts

---

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

1 through 7. The information also alleged Salgado had been previously convicted of two strike offenses. (§§ 667, subds. (d) & (e)(2)(A), 1170.12, subds. (b) & (c)(2)(A).)

Salgado's first trial ended in a mistrial, which we discuss anon. At Salgado's second trial, the prosecution offered expert testimony on gangs and Salgado's gang affiliation. An officer testified that the month before the shooting, Salgado admitted he was a member of the West Myrtle gang and his moniker was "Baby Dreamer." The gang expert testified concerning the concept of respect in gangs. The expert explained that the more violent the crime, the more respect the member earns in the gang and his status increases. He said gang members "hit up" individuals, which means they confront rival gang members by asking them "where they are from."

Based on Salgado's prior contacts, his West Myrtle tattoos, his admission, and the gang indicia at his house, the expert opined that Salgado was an active participant in West Myrtle at the time of the offense. Based on a hypothetical mirroring the facts of the case, the gang expert opined that the crime of attempted murder would benefit the street gang, and the crime was done with the intent to promote, further, or assist criminal conduct of West Myrtle gang members. The expert explained that the fact the gang member claimed gang membership and engaged in violent conduct showed the gang controlled the neighborhood and instilled intimidation and fear in the community.

The jury convicted Salgado of all the offenses and found true all the enhancement allegations. Salgado admitted he suffered the prior convictions, and the trial court found true aggravating circumstances related to his priors.

The trial court sentenced Salgado to 90 years in prison. As to counts 1 and 2, the court sentenced him to the middle term of seven years increased to 25 years to life because of the two strikes plus 20 years for the firearm enhancement. With respect to counts 3 through 5, the court imposed the low term and stayed them pursuant to section 654. As to counts 6 through 9, the court imposed the low terms to be served concurrently.

## DISCUSSION

### I.

#### INEFFECTIVE ASSISTANCE OF COUNSEL

Salgado argues he received ineffective assistance of counsel because his trial counsel did not object to retrial of the gang enhancements on double jeopardy grounds. We disagree.

*A. Background*

In the middle of Salgado's first trial, the prosecution requested a continuance because the Second District Court of Appeal had just decided *People v. Delgado* (2022) 74 Cal.App.5th 1067 (*Delgado*). In that case, the court held recent legislation amending section 186.22, Assembly Bill No. 333 (2021–2022 Reg. Sess.), required that at least two gang members commit each predicate offense. (*Delgado, supra*, 74 Cal.App.5th at pp. 1088–1089 [interpreting collective engagement requirement].)[3] The prosecutor explained a continuance was necessary to satisfy its discovery obligations. Salgado agreed to the three-week continuance.

Days before trial was to resume, the prosecution filed a brief requesting the trial continue without the gang allegations. Citing to *Delgado*,

---

[3] The California Supreme Court recently disapproved of *Delgado* on this point. (*People v. Clark* (2024) 15 Cal.5th 743, 764, fn. 8.)

5

the prosecution stated it was "unable to proceed with the gang enhancements." The prosecution argued mistrial was inappropriate because gang evidence was admissible as to the substantive offenses.

When trial resumed, Salgado moved for a mistrial. After the trial court noted the prosecution was unable to proceed on the gang enhancements, it explained jurors heard an abundance of gang information during voir dire and opening statements. The court opined the prejudice could not be cured by an admonition or instruction. The court granted Salgado's request for a mistrial. Salgado's trial counsel did not inquire of the status of the enhancements or request the court make any ruling, and the court did not make any further ruling.

At the second trial, the prosecution proceeded with the gang enhancements without objection. The jury returned true findings on all the gang enhancements.

*B. Law and Analysis*

"""To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."" (*People v. Rices* (2017) 4 Cal.5th 49, 80.) "On direct appeal, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,'" we must reject the claim "'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.""" (*People v. Caro* (2019) 7 Cal.5th 463, 488.) "[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel

6

should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.)

In essence, the double jeopardy clause protects a person from repeated prosecutions for the same offense. (*People v. Wilson* (2023) 14 Cal.5th 839, 852.) "Whether double jeopardy principles bar a second prosecution depends on how the first trial ended. . . . 'The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal.'" (*Ibid*.) If the defendant is convicted in the first trial and that conviction is overturned, the result may be different. (*Ibid*.) Double jeopardy precludes retrial when a conviction is reversed for insufficient evidence. (*Id*. at p. 853.) But it does not preclude retrial when a conviction is reversed for ordinary trial errors. (*Ibid*.)

The remedy for violation of the double jeopardy clause is dismissal. (*People v. Batts* (2003) 30 Cal.4th 660, 679 (*Batts*).) When the prosecution seeks to retry a charge that is subject to the double jeopardy clause, defense counsel should file a motion to dismiss the accusatory pleading or portion thereof allegedly barred by double jeopardy. (*Id*. at p. 676.)

When a mistrial is declared over a defendant's objection, double jeopardy principles bar retrial unless the mistrial was justified by "'manifest necessity,'" such as a hung jury. (*Batts, supra*, 30 Cal.4th at p. 679.) In contrast, when a mistrial is declared at a defendant's request, the general rule is that the defendant waives any double jeopardy claim and retrial is permitted. (*Id*. at pp. 679–680.) Under federal law, there is an exception permitting retrial where the prosecutor intended to goad the defendant into requesting a mistrial. (*Id*. at p. 681.)

California's double jeopardy clause provides broader protections. (*Batts, supra*, 30 Cal.4th at p. 692.) It "bars retrial following the grant of a defendant's mistrial motion (1) when the prosecution intentionally commits misconduct for the purpose of triggering a mistrial, and also (2) when the prosecution, believing in view of events that unfold during an ongoing trial that the defendant is likely to secure an acquittal at that trial in the absence of misconduct, intentionally and knowingly commits misconduct in order to thwart such an acquittal—and a court, reviewing the circumstances as of the time of the misconduct, determines that from an objective perspective, the prosecutor's misconduct in fact deprived the defendant of a reasonable prospect of an acquittal." (*Id.* at p. 695.)

Here, Salgado has failed to establish that his trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. The record does not show why trial counsel did not file a motion to dismiss the gang enhancements. However, there was a satisfactory explanation for why he would not file such a motion. Well settled authority from our Supreme Court precluded his argument.

*Batts* holds that when a trial court grants a defendant's request for mistrial, the defendant waives any double jeopardy claim and retrial is permitted. (*Batts, supra*, 30 Cal.4th at pp. 679–680.) Had Salgado brought such a motion, the trial court would have denied it. In other words, such a motion would have been futile, not meritorious as Salgado contends. The record includes no evidence the prosecution goaded Salgado into requesting a mistrial. The mistrial stemmed entirely from the fact there was a clarification of the law during the middle of trial that hamstrung the prosecution's case.

Salgado insists "the dismissal was based on the prosecutor's inability to prove the [gang enhancements]." To the contrary, the trial court never ruled on the prosecution's motion to dismiss the gang enhancements. As the Attorney General notes, the court proceeded to immediately address Salgado's motion for a mistrial, which when granted resulted in a waiver of his double jeopardy claim.

Salgado states he does not question trial counsel's decision to seek a mistrial during the first trial. His complaint is though that counsel was left in an untenable position: forego the mistrial motion and permit an unfair trial on the remaining counts or pursue mistrial and waive double jeopardy on the gang enhancements. Trial counsel are often confronted with difficult and nuanced tactical decisions. Based on this record, Salgado has not established his trial counsel provided deficient performance.

*II. Jury Instructions*

Salgado contends the trial court erred in instructing the jury on two of the aggravating circumstances, California Rules of Court, rule 4.421(a)(1) (great violence, etc.) and (b)(1) (violent conduct). His contentions fail for a couple of reasons.

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended section 1170 to limit the trial court's discretion to impose a sentence greater than the middle term. (§ 1170, subd. (b)(1), (2), as amended by Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2), states, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been

found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

A trial court has a sua sponte duty to instruct the jury on all elements of charged sentencing enhancements. (*People v. Wims* (1995) 10 Cal.4th 293, 303, limited on other grounds in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326.) We review instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

Here, jury trial was in the summer of 2022. The trial court instructed the jury with the language from California Rules of Court, rule 4.421(a)(1) and (b)(1). Rule 4.421(a)(1) states, "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." Rule 4.421(b)(1) provides, "The defendant has engaged in violent conduct that indicates a serious danger to society." The following year, the Judicial Council adopted jury instructions for the aggravating circumstances.

CALCRIM No. 3224, the instruction for California Rules of Court, rule 4.421(a)(1), states in relevant part, "You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was *distinctively worse* than an ordinary commission of the underlying crime." (CALCRIM No. 3224, italics added.) CALCRIM No. 3234, the instruction for rule 4.421(b)(1), states in relevant part, "You may not find the allegation true unless all of you agree that the People have proved that the defendant's violent conduct was *distinctively worse* than that posed by an ordinary commission of the underlying crime and that the violent conduct, considered in light of all the evidence presented . . . , shows that the defendant is a serious danger to society." (CALCRIM No. 3234, italics added.)

Salgado asserts the trial court erred by failing to include the *distinctively worse* language in the two instructions. Not so.

The trial court's instruction for California Rules of Court, rule 4.421(a)(1) stated, "To prove this allegation, the People must prove that the crime involved great violence, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness, specifically that the defendant: fired at victims' heads, fired three times, fired at unsuspecting victim, fired from a close distance." (Boldface omitted.) This instruction informed the jury that to return a true finding they must find Salgado committed the offenses with an immense amount of cruelty, viciousness, or callousness. Additionally, the factual description of the offenses highlighted how Salgado's conduct was greater than necessary to commit them. In other words, the instruction required the jury to find Salgado's conduct was *distinctively worse* than commission of the ordinary crime.

The trial court's instruction for California Rules of Court, rule 4.421(b)(1) provided, "The defendant has engaged in violent conduct that indicates a serious danger to society." The instruction did not simply require the jury to find he was a danger to society. To the contrary, the instruction informed the jury that to return a true finding they must find Salgado engaged in conduct that was a *serious* danger to society. Integral to this finding was that Salgado represents a *distinctively worse* danger to society than an ordinary criminal.

In any event, Salgado was not prejudiced. Even if the trial court had included the *distinctively worse* language in the contested jury instructions, the jury would still have found each aggravating circumstance true beyond a reasonable doubt. (*People v. Cooper* (2023) 14 Cal.5th 735, 742–

11

743 [missing element of offense or enhancement review under *Chapman v. California* (1967) 386 U.S. 18]; *People v. Castorena* (1996) 51 Cal.App.4th 558, 562 [Evidence of conduct exceeding the minimum necessary to establish an offense or enhancement makes it distinctly worse than the ordinary offense]; *People v. Moreno, supra*, 128 Cal.App.3d at p. 110.)

Here, there was overwhelming evidence Salgado committed the crimes in a distinctively worse way than what was necessary to accomplish them. Salgado hunted the unassuming innocent victims who were not part of any gang. He approached their vehicle, confronted them, and then fired his gun numerous times as the victims sped away. There was no evidence the victims confronted or provoked him. Moreover, the evidence showed that Salgado aimed to kill—three bullets struck the victims' car at the height of their heads, and one bullet whizzed by Father's head. The evidence established Salgado was hunting for sport to gain respect in his gang. Based on this evidence, the jury still would have found both aggravating circumstances true beyond a reasonable doubt if the instructions would have included the *distinctively worse* language.

Additionally, Salgado's sentence should be affirmed because the trial court did not impose an upper term on his sentence. The court imposed the middle term on the indeterminate sentence on counts 1 and 2, which because of his two strikes resulted in a sentence of 25 years to life (§ 667, subd. (e)(2)(A)). The court imposed the lower term on counts 3 through 9. As Salgado concedes, any error concerning the aggravating circumstance instructions did not affect his sentence. Because the court did not rely on the true findings on the two aggravating circumstances to impose the upper term, any error was harmless.

## DISPOSITION

The judgment is affirmed.


                                        O'LEARY, P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.