Filed 4/21/21  P. v. Mukai CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MASAYOSHI MUKAI,<br><br>    Defendant and Appellant. | F078948<br><br>(Merced Super. Ct.<br>No. 17CR-07747)<br><br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on April 12, 2021, be modified in the following particulars:

1.  On page 28, the first full paragraph beginning "We thus conclude" is modified to read as follows:

We thus conclude the court did not abuse its discretion when it imposed the upper term in this case.  While the court improperly relied on one particular aggravating circumstance, the error was not prejudicial because it is "not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." (*People v. Avalos* (1984) 37 Cal.3d 216, 233; *People v. Scott*, *supra*, 9 Cal.4th at p. 355.)

There is no change in the judgment.  Appellant's petition for rehearing is denied.

MEEHAN, J.

WE CONCUR:


FRANSON, Acting P.J.


DE SANTOS, J.

Filed 4/12/21  P. v. Mukai CA5 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MASAYOSHI MUKAI,<br><br>    Defendant and Appellant. | F078948<br><br>(Merced Super. Ct. No. 17CR-07747)<br><br>**OPINION** |

THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  David W. Moranda, Judge.

Jyoti Meera Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Franson, Acting P.J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant and defendant Masayoshi Mukai admitted he had consumed " 'unknown' amounts" from a " 'pile' of drugs" on the night before and morning of December 26, 2017, and then drove to Fresno with a friend, 20-year-old Maya Isabel Thone (Ms. Thone). While on State Route 152, he drove in excess of 100 miles per hour, weaved in and out of traffic, and his vehicle overturned. Ms. Thone was pronounced dead at the scene. Defendant tested positive for methamphetamine, cocaine, and opiates.

Defendant pleaded guilty as charged to gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a))[1] and three other offenses. He was sentenced to the upper term of 10 years.

On appeal, defendant argues the court abused its discretion when it imposed the upper term, relied on aggravating factors that were elements of the offense, and failed to consider mitigating factors. Defendant also argues the court improperly ordered him to pay a restitution fine and assessments without determining whether he had the ability to pay in violation of his constitutional right to due process based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We order correction of the abstract of judgment and otherwise affirm.

## FACTS[2]

On December 26, 2017, at approximately 6:06 p.m., California Highway Patrol Officer Mariscal responded to a dispatch about a traffic accident that occurred on the two-lane eastbound direction of State Route 152 near Flanagan Road in Merced County. At 6:27 p.m., Officer Mariscal arrived on the scene and determined there had been a solo vehicle rollover. There were two occupants trapped inside of a silver 2013 Nissan Sentra.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] The following facts are from Officer Mariscal's report and the probation report, which both parties discussed at the sentencing hearing and rely on for their factual statements on appeal.

2.

The vehicle was on its roof, it was heavily damaged and crushed, and the front seat airbags had been deployed.

Ms. Thone was in the front passenger seat of the crushed vehicle and still wearing her seat belt. She suffered fatal injuries as a result of the incident, and emergency personnel at the scene pronounced her dead at 6:22 p.m. Ms. Thone was 20 years old and in her third year of nursing school.

Defendant was trapped in the driver's seat and his seatbelt was still fastened. Officer Mariscal reported defendant was heavily intoxicated and his eyes were dilated. He did not answer questions or identify himself when asked. A paramedic cut off defendant's seatbelt and he fell out of the car, rolled out, stood up, and had a blank stare. Defendant had blood on his mouth and on top of his head, and scratches on his arms. Defendant made no attempt to communicate with Ms. Thone and did not ask the officer or emergency personnel about her condition.

Officer Mariscal again asked defendant for his name. Defendant eventually said his name was "James," and he did not know where he was or what had happened. Defendant was subsequently identified as Masayoshi Mukai because a business card with his name was found in the vehicle's debris. He had a valid driver's license and was the registered owner of the vehicle.

Officer Mariscal asked defendant to perform a Preliminary Alcohol Screening (PAS) test, but defendant did not give a sufficient sample. Defendant was airlifted to a hospital in Modesto.

During his investigation at the scene, Officer Mariscal spoke with two witnesses who were driving in the same eastbound direction as defendant. Charles Massey reported that he was going 65 miles per hour in the number one (left) lane and saw defendant's car as it was "fast approaching from the rear." Defendant's car turned left into the center dirt median and passed Massey's car on the left side while going over 100 miles per hour.

3.

Defendant tried to turn right to get back onto the road, but he lost control and went into the field on the far, right shoulder of the roadway.

Luke Catrina said he was going approximately 68 miles per hour in the number two (right) lane and also saw defendant traveling at a high rate of speed in the number one lane. Catrina saw defendant pass another vehicle using the center median, cross back onto the road, and lose control. Defendant's car crossed both eastbound lanes, went into the field off the right shoulder, hit a ditch, and rolled over several times.

Officer Mariscal found a blue duffel bag in the debris from defendant's overturned car. It contained a Ziploc bag with black tar heroin, cocaine, PCC that was a precursor of PCP, and amphetamine and morphine pills.

Later that night, Officer Mariscal obtained a warrant to get a blood sample from defendant at the hospital. The blood test was taken at 10:06 p.m., and was positive for cocaine, methamphetamine, and opiates. Defendant's urine sample was positive for amphetamines, benzodiazepine, cocaine, PCP, and opiates.

## PROCEDURAL HISTORY

On December 29, 2017, a felony complaint was filed in the Superior Court of Merced County charging defendant with count 1, gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); count 2, driving under the influence of a drug causing death or great bodily injury (Veh. Code, § 23153, subd. (f)); count 3, misdemeanor being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)); and count 4, misdemeanor possession of heroin (*id.*, § 11350).

Defendant was released on bond.

### Defendant's statements to the probation officer

After being advised of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, defendant gave a lengthy statement prior to his plea to the probation officer, that both the court and the parties discussed at the subsequent sentencing hearing.

4.

Defendant, who was 35 years old, had a graduate degree from Cambridge University in England, and said he finished law school but never took the bar examination. He had worked at various investment firms and nonprofit organizations. Defendant said his name had been "James Masa Maher," and he legally changed it to "Masayoshi Mukai" in 2011. Defendant had no prior juvenile or criminal record. He had three prior traffic convictions for speeding and two for driving without a seatbelt and did not have any points on his driving record.

Defendant had a 13-year-old daughter from a previous relationship. Defendant became "very emotional when talking about his daughter and stated, '[Ms. Thone] knew how important my daughter is to me. She lived with me until she was twelve. I was a single father. I became very depressed when she went to live with her mother. Ever since my daughter left, my life fell apart. She was twelve…."

Defendant said in 2005, he married a woman who was not his daughter's mother. The couple separated about six months prior to the fatal crash. Defendant said the separation from his wife " 'assisted in' his 'depression' leading up to the instant offense being committed. Moreover, the defendant stated that he and his wife reunited after the instant offense occurred; however, he became very emotional when he advised this officer that he and his wife, separated again approximately one week prior to [his wife] ultimately committing suicide on August 3, 2018."

Defendant, who lived in San Jose, explained why Ms. Thone was with him on the day of the crash and where they were going. " '[Ms. Thone] knew … how depressed I was that [my daughter] left to go live with her mother. [Ms. Thone] was very worried about me being so depressed. She knew me and my daughter always went to Hmong New Year in Fresno. She encouraged me and told me that my daughter would text me but she didn't. [She] offered to go with me to Hmong New Year. She was so worried because she knew that I was doing drugs and stuff, but I didn't feel intoxicated. I told her, "I honestly don't feel impaired." I drove for like three hours and there was a lot of

traffic. I want whatever they [referring to Ms. Thone's family] want[]. That's what I want as well.' "

Defendant said he took full responsibility for his actions and became emotional talking about Ms. Thone and her family. He said he wanted the maximum sentence: "Assuming they want the max. I will take the max, because I want [Ms. Thone's family] to heal, out of concern for them. I feel so horrible. I'll take whatever's in my power to do to help the family heal. It's in my power to take the maximum sentence. It's the least I can do. Whatever money I have, I'll give to them …." Defendant said he had written a letter to the court and Ms. Thone's family that contained everything he wanted to say.

Defendant told the probation officer that he had already given $45,000 to Ms. Thone's family and showed photographs on his cell phone with images of three cashier's checks made out to her father, mother, and brother for $15,000 each.

Defendant said that for the past three years, he had worked in "the Adult Film Industry," which is why he had the money to pay Ms. Thone's family. Defendant claimed he was not "into drugs" until he "got into the Adult Film Industry," but also admitted he started drinking alcohol when he was 15 years old, using marijuana when he was 18 years old, and using crystal methamphetamine when he was in his 20s. Defendant said he used black tar heroin when he was depressed. He also used Xanax and "abused" Etizolam, an analog of Xanax.

Defendant said that on the night before and on the morning of the fatal crash, he consumed " 'unknown' amounts of illegal drugs." He used crystal methamphetamine the night before, and " 'snorted it' " in the morning. In addition, he possibly used a form of heroin or an opioid, and he was not certain if Xanax was "in the 'pile' of drugs" that he used.

The probation officer concluded that defendant's decision to drive after consuming an unknown amount of illegal drugs was "inexcusable and placed the community, the victim and his life at risk," and his blood test confirmed his statements about his drug use.

"Unfortunately, the reckless decision that the defendant made, resulted in the tragic death of the victim and the lives of the victim's family and friends will be forever changed," and defendant would have to live with the tragedy for the rest of his life.

The probation officer stated that if defendant pleaded or was convicted of the charged offenses, he should be sentenced to state prison.

## PLEA AND SENTENCING

On October 26, 2018, prior to the preliminary hearing being held, defendant pleaded guilty to the four counts alleged in the complaint.

Ms. Thone's family addressed the court about the devastating impact of defendant's crime and their great loss. The court set the matter for the sentencing hearing.

## Defendant's letter to Ms. Thone's family

After he entered his plea, defendant wrote a letter to Ms. Thone's family. The prosecution entered it as an exhibit at the sentencing hearing, and the court and the parties addressed it at that hearing.

In the letter, defendant said that several months before the fatal crash, he had serious family problems when his wife left him, and his daughter attempted suicide. He had raised his daughter by himself for 12 years with nearly no assistance from her mother. His wife (who was not the child's mother) committed suicide a few weeks before he wrote this letter.

Defendant said that both his wife and his daughter ignored him at Christmas. Ms. Thone knew about his situation, she was supportive and caring, and they had a strong friendship. She did not want him to spend the holidays by himself because she feared that he might hurt himself. Defendant knew he had to be cautious "to prevent spreading the toxicity of my world into hers." Ms. Thone accompanied him to the Hmong New Year celebration in Fresno to help him continue what had been a tradition with his

7.

daughter. Ms. Thone knew that his life was at risk if she did not stay with him. Defendant wrote that his actions were "pathetic and embarrassingly selfish."

Defendant complained that he was initially arrested in this case for drug dealing and trafficking, but asserted he never profited from drug sales because he was a "sick, weak, and pathetic person who ran to drugs for consumption…." Defendant also complained it was "unprofessional" for law enforcement and the justice system to accuse him of drug dealing. He pleaded guilty only to the charges related to Ms. Thone that he "felt responsible for," and asked the court to "examine the legitimacy of the basis for the other charges" that were ultimately dropped.[3]

Defendant said that "unless probation were granted," he would voluntarily accept the maximum term of 10 years.

**Sentencing hearing**

On December 7, 2018, the court held the sentencing hearing. The prosecutor moved to introduce 20 exhibits. The court asked defense counsel if he had reviewed the exhibits and had any objections. Counsel replied he had reviewed the items and did not object.

The court marked and admitted the toxicology report; defendant's letter to Ms. Thone's family; photographs of the damaged car, collision scene, bag with the drugs, and Ms. Thone in the car; the laboratory report for the drugs found by the car; a report that Ms. Thone had no controlled substances in her system at the time of death; Ms. Thone's certified death certificate that stated she died from blunt impact injuries to

---

[3] Based on the drugs found near defendant's car, Officer Mariscal's report about the fatal crash recommended charging defendant with possession of morphine without prescription (Health & Saf. Code, § 11350, subd. (a)); transportation of morphine without prescription (*id.,* § 11352, subd. (a)); possession of amphetamines (*id.*, § 11377, subd. (a)); transportation of amphetamines (*id.*, § 11379, subd. (a)); possession of heroin (*id.*, § 11350, subd. (a)); transportation of heroin (*id.*, § 11352, subd. (a)); and transportation of cocaine (*ibid.*). He was only charged with possession of heroin and not any other narcotics offenses.

her head, thoracic area, and right arm; and the dash-cam video from Charles Massey's car that showed defendant passing him on the center median and then going off the road.[4]

The prosecutor argued defendant was statutorily ineligible for probation under section 1203, subdivision (e)(3) based on victim's "the level of injury," and he would still be ineligible for probation under the facts and circumstances of the case.

The prosecutor also argued the exhibits supported several aggravating circumstances and requested the upper term of 10 years for count 1.

First, the prosecutor cited to the dash-cam video and statements from the two witnesses, and argued defendant was driving at high speed in an extremely dangerous manner, and that was an aggravating factor for sentencing purposes.

Next, the prosecutor asked the court to consider the nature of Ms. Thone's injuries, photographs showing her fatal injuries in the damaged car, and that she died within 22 minutes of the 911 call about the crash. The photographs showed "the level of carnage done to the vehicle," consistent with the descriptions from the witnesses about how fast defendant was going, and that defendant admitted he used "a pile of drugs."

The prosecutor further argued the photographs showed that the level of violence and injury resulting from defendant's driving was "something that the Court should weigh as an aggravating factor in order to see the maximum penalty in this case." Ms. Thone was not using any controlled substances and defendant admitted she was concerned for his well-being. However, defendant admitted he used "a pile of drugs," his admission was confirmed by the toxicology report, his conduct showed that he did not share a concern for Ms. Thone's safety, and he never asked about Ms. Thone's condition when the officers responded to the scene.

---

[4] The court marked and admitted Ms. Thone's certified death certificate as Exhibit 20, but it was not included in the appellate record.

The prosecutor argued the amount of illegal drugs in defendant's car was another aggravating circumstance because his car was "a rolling pharmacy," and he could have been charged with transportation or possession.

Defense counsel replied that defendant was not statutorily ineligible for probation, he would carry this tragedy with him for the rest of his life, and he had taken responsibility and shown remorse. He did not have a prior record and made poor choices that resulted in the fatal collision. While the video was disturbing, defense counsel urged the court to "dispassionately pronounce sentence." Defense counsel argued the court could not rely on the prosecutor's evidence about defendant's poor driving, intoxication, and Ms. Thone's great bodily harm because these were elements of the primary charge in count 1, gross vehicle manslaughter while intoxicated.

Defendant addressed the court and reaffirmed the statement in his letter, that he wanted "to get the ten years." Defendant asked to surrender in one month so he could spend some time with his family before he turned himself in.

### *The court's findings*

The court disagreed with the prosecutor's argument that defendant was statutorily ineligible for probation for a "willful" act pursuant to section 1203, subdivision (e)(3).[5]

The court found defendant was eligible but not suitable for probation because of the nature, seriousness, and circumstances of the crime as compared to other instances of the same crime and denied probation.

> "Although the defendant has no prior record, appears to be genuinely remorseful, the Court cannot overlook the nature, seriousness and the circumstances of the crime as compared to other instances of the same crime.

---

[5] Section 1203, subdivision (e)(3) states that except in unusual cases, any person is statutorily ineligible for probation who "willfully inflicted great bodily injury or torture in the perpetration of the crime of which that person has been convicted."

10.

"Here, the defendant drove at a high rate of speed; perhaps as high as a hundred miles an hour, according to one witness. I had a chance, as everybody else did, to look at the video. It appears to – to bear that out. And passed in the median of a busy highway. He had at least three different drugs in his system, having admitted to taking them on the night before and that morning before the accident. Numerous drugs were found in the vehicle. The victim [Ms. Thone] was vulnerable. She was only twenty, a nursing student, full of life and high hopes. [Ms. Thone] was killed and her family and friends will carry the emotional injury with them for the rest of their lives. There's a likelihood that if the defendant was not in prison, he would be a danger to others. His life had been spinning out of control for at least the last six months prior to this accident. So probation is denied."

The court turned to the sentence:

"As far as the sentence is concerned, the Court has looked at the different Rules of [C]ourt and aggravating circumstances as pointed out by [the prosecutor]; the mitigating circumstances as pointed out by [defense counsel]. The defendant engaged in violent conduct that created the same – a serious danger to society. The crime involved great bodily injury; in fact, death to the victim, [Ms. Thone]. The defendant exhibited callousness or at the very least indifference to the safety of [Ms. Thone] while he was driving that vehicle impaired. She was only twenty; he was thirty-four. She put her trust in him to drive soberly and properly. He did not. As – and I believe the defendant does want to be held accountable, and it is the time to be held accountable for his actions. Although I commend the defendant's appearing to take accountability for his actions, and I hope that while he's in prison he can make amends and perhaps teach others about the dangers of impaired driving."

The court imposed the upper term of 10 years for count 1; stayed the upper term imposed for count 2; and imposed concurrent one-year terms for each of misdemeanor counts 3 and 4.

The court imposed a restitution fine of $6,000 (§ 1202.4, subd. (b)), suspended the parole revocation fine of $6,000 (§ 1202.45), and reserved victim restitution (§ 1202.4, subd. (f)). For each conviction, the court imposed a court operations assessment of $40 for a total of $160 (§ 1465.8); and a criminal conviction assessment of $30 for a total of $120 (Gov. Code, § 70373).

The court noted that defendant had been released on bond during the trial and had made all his appearances. The court asked the prosecutor if she was going to object to allowing defendant to turn himself in at a later date. The prosecutor said the victim's family did not object. The court ordered defendant to turn himself in on January 9, 2019.

On January 9, 2019, defendant appeared as ordered and was remanded into custody.

On January 31, 2017, defendant filed a notice of appeal based on the sentence and other matters occurring after the plea and challenged the validity of the plea. Defendant requested a certificate of probable cause based on the alleged ineffective assistance of his trial counsel for allowing him to plead to the charged offenses. On February 1, 2019, the court denied the request for a certificate of probable cause.

## DISCUSSION

### I.     Imposition of the Upper Term

Defendant contends the court improperly imposed the upper term for gross vehicular manslaughter while intoxicated because it relied on aggravating factors that were elements of the offense. Defendant further argues the court sentenced him based on "emotion rather than reason," and failed to consider numerous mitigating factors.

#### A.     *The Court's Sentencing Choices*

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b); *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196.) The court has "broad discretion to consider relevant evidence at sentencing." (*People v. Towne* (2008) 44 Cal.4th 63, 85.) " '[T]he court may consider the record in the case, the probation officer's report, … and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, … and any further evidence introduced at the sentencing hearing.' [Citations.]" (*People v. Shenouda* (2015) 240 Cal.App.4th 358, 368.)

"Circumstances in aggravation include factors relating to the crime and factors relating to the defendant." (Cal. Rules of Court, rule 4.421.)[6] Factors relating to the crime include that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; or the defendant took advantage of a positive of trust or confidence. (Rule 4.421(a).) A factor relating to the defendant is that the defendant engaged in violent conduct that indicated a serious danger to society. (Rule 4.421(b).)

The court may also consider "[a]ny other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed." (Rule 4.421(c).) "The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made." (Rule 4.408(a).)

"Neither section 1170 nor the California Rules of Court attempt to provide an inclusive list of aggravating circumstances. Thus, a trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made. [Citations.]" (*People v. Moberly*, *supra*, 176 Cal.App.4th at p. 1196.)

"Only a single aggravating factor is required to impose the upper term [citation] …." (*People v. Osband* (1996) 13 Cal.4th 622, 728; *People v. Black* (2007) 41 Cal.4th 799, 815.) However, the court may not "use a fact constituting an element of the offense either to aggravate or to enhance a sentence. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. omitted; Rule 4.420(d).)

---

[6] All further citations to rules are to the California Rules of Court unless otherwise indicated.

13.

"A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] Second, a " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " [Citations.]' [Citation.] Even if a trial court has stated both proper and improper reasons for a sentence choice, 'a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper. [Citation.]' [Citation.]" (*People v. Jones* (2009) 178 Cal.App.4th 853, 860–861.)

### 1. Forfeiture

We first address respondent's contention that defendant forfeited appellate review of the court's imposition of the upper term. As noted by respondent, "[a] party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' [citation], but the rule does not apply when the sentence is legally unauthorized [citation]." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.)

At the sentencing hearing, however, defense counsel objected to the prosecutor's argument about aggravating circumstances, and specifically asserted the prosecutor was relying on factors that also constituted elements of defendant's conviction for gross vehicular manslaughter while intoxicated and that constituted an improper dual use of facts. When the court imposed the upper term, it relied on some of the same factors cited by the prosecutor, effectively overruling defense counsel's earlier objection. Counsel could have reasonably concluded that another objection would have been futile under the circumstances. Thus, defendant did not forfeit appellate review of his sentencing arguments.

We thus turn to the merits of defendant's arguments

## B.     *Gross Vehicular Manslaughter*

We begin with the elements of gross vehicular manslaughter while intoxicated, which is "the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section … 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence."

As relevant to this case, Vehicle Code section 23153 prohibits driving under the influence of alcohol or any drug and to "concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver." (Veh. Code, § 23153, subds. (a), (f).)

The elements of the a violation of section 191.5 are "(1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the

15.

negligent act, another person was killed. [Citation.]" (*People v. Wilson* (2013) 219 Cal.App.4th 500, 509.)

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. [Citation.]" (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.)

"[G]ross negligence cannot be shown by the *mere fact* of driving under the influence and violating the traffic laws. Otherwise, gross and simple vehicular manslaughter while intoxicated would be identical crimes with different punishments which would create obvious due process problems. [¶] [G]ross negligence can be shown by the *manner* in which the defendant operated the vehicle, that is, the overall circumstances (rather than the mere fact) of the traffic law violation." (*People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1427.) "[G]ross negligence may be shown from *all* the relevant circumstances, including the manner in which the defendant operated his vehicle, the level of his intoxication, and other relevant aspects of his conduct." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1207–1208.)

### C. *Castorena and Weaver*

There are two cases that have examined the appropriate aggravating circumstances to impose upper terms for convictions of gross vehicular manslaughter while intoxicated.

In *People v. Castorena* (1996) 51 Cal.App.4th 558 (*Castorena*), the defendant joined coworkers in consuming four or five pitchers of beer over several hours. He then drove to a friend's house, where he drank four glasses of brandy. When he tried to leave, he walked through a window. His friend took his keys, said he was too drunk to drive, and offered to take him home. After a disagreement, the defendant regained his keys and drove away. He drove 70 to 100 miles an hour, often on the wrong side of the street, and

16.

ran several red lights. The defendant ultimately rear-ended a car, injuring the driver and killing the passenger. (*Id*. at p. 560.) The defendant later admitted that he drank beer but denied he was intoxicated at the time, and further admitted he became drunk after drinking brandy at his friend's house. He could not remember leaving the house or anything about the accident. (*Id*. at pp. 560–561.)

The defendant was convicted by a jury of gross vehicular manslaughter while intoxicated. The court imposed the upper term based on the following aggravating circumstances:

> " 'The evidence clearly demonstrated the defendant was malicious in his conduct and that such conduct involved planning.… After having been told he was too drunk to drive, after having his keys taken away and after being offered another means of transportation, defendant drove anyway, apparently because he would have been inconvenienced [because he needed to have his keys to drive to work the next day]. [¶] In addition,… the evidence demonstrated that the defendant in his driving was attempting to avoid detection. Also, while an element of this crime is gross negligence, defendant's conduct exceeded even the word gross. While at almost three times the legal limit of blood alcohol[,] it was .20 [percent], as I recall, he drove at speeds up to 100 miles an hour on the wrong side of the road running several red lights and narrowly missing injury to several other persons after having consumed 10 to 12 glasses of beer and 4 glasses of brandy.... [¶] … [¶] Because of the gravity and weight of the aggravating factors, defendant is sentenced to the upper term of 10 years in state prison.' " (*Id*. at pp. 561–562, fn. omitted.)

*Castorena* rejected the defendant's argument that the court improperly imposed the upper term based on the same facts that the jury used to convict him of gross vehicular manslaughter:

> "[Former] Rule 420(d)[7] provides, 'A fact that is an element of the crime shall not be used to impose the upper term.' However, where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to

---

**7** Rule 4.420(d) similarly states: "A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."

17.

aggravate the sentence. [Citation.] Stated another way, rule 420(d) does not preclude a court from using facts to aggravate a sentence when those facts *establish elements not required* for the underlying crime.

"Here, the trial court, recognizing the dual use proscription, relied on facts exceeding those necessary to establish gross negligence. It determined 'while an element of this crime is gross negligence, defendant's conduct exceeded even the word gross.' The court found such evidence demonstrated *implied malice which is an element of second degree murder – not gross vehicular manslaughter while intoxicated.* [Citation.]

"To accept [the defendant's] contention would impermissibly limit trial courts from imposing an aggravated term in gross vehicular manslaughter cases. Such a result was never intended by the Legislature: 'The determinate sentencing law authorizes the court to select the [lower, middle or upper] prison term…. [¶] … if circumstances justify that choice appear upon an evaluation of the record as a whole.' [Citations.] Accordingly, we find no error in sentencing." (*Castorena*, *supra*, 51 Cal.App.4th at pp. 562–563, fn. omitted.)

In *People v. Weaver* (2007) 149 Cal.App.4th 1301 (*Weaver*), disapproved on another ground by *People v. Cook* (2015) 60 Cal.4th 922, 939, the court rejected this assertion in a case where the defendant consumed several shots of alcohol while celebrating her college graduation. She then drove at night on a highway without the car's headlights on and went the wrong way while going over 70 miles per hour. Several vehicles took evasive actions to avoid the defendant, but she did not stop or slow down. The defendant merged onto Interstate 5 and continued in the wrong direction. The defendant collided head-on with another vehicle, killing the passenger and seriously injuring the driver. The defendant's blood-alcohol level was 0.151 percent, and she tested positive for cocaine. (*Weaver*, at pp. 1307–1308.)

The defendant pleaded guilty to gross vehicular manslaughter while intoxicated and the court denied probation. The court found the defendant was genuinely remorseful and not a chronic partygoer in college, and acknowledged there were factors that supported probation including the defendant's youth, lack of significant record, just one speeding ticket, the absence of actual malice, her genuine remorse, and her ability to

18.

comply with the conditions of probation if probation were granted. However, the court also noted the " 'dreadful' " injuries suffered by the surviving victim, "the horrific nature of this offense," the "dreadful loss" to the deceased victim's family, the defendant did not stop driving after the near misses, her high blood alcohol level, and the presence of cocaine in her system. The court also found the victims, a husband and wife, were vulnerable because they were lawfully driving on the highway and did not expect this to happen. (*Weaver, supra*, 149 Cal.App.4th at pp. 1310–1311.)

As for the defendant's sentence, the trial court again acknowledged mitigating factors but found they were outweighed by aggravating circumstances and imposed the midterm: " 'Here the offense is aggravated. I have described that. I don't need to describe it again. I don't need to make people listen to that anymore. It is a dreadful loss and a horrifying event. The circumstances regarding [the defendant] are in this court's mind entirely mitigating, but for her decision to drive that night, which perhaps none of us will fully understand." (*Weaver, supra*, 149 Cal.App.4th at p. 1319.)

On appeal, the defendant argued the court abused its discretion when it denied probation, found aggravating circumstances, rejected mitigating circumstances, and imposed the midterm. The defendant argued "victim vulnerability" was not an aggravating circumstance because "all victims of gross vehicular manslaughter are vulnerable," all such offenses are " 'horrific,' " and "all losses suffered by victims' families are 'dreadful.' " (*Weaver, supra*, 149 Cal.App.4th at p. 1321.)

*Weaver* held the court did not abuse its discretion when it imposed the midterm, and the findings on aggravating circumstances were appropriate because one such circumstance was whether the victim was " 'particularly vulnerable.' " (*Weaver, supra*, 149 Cal.App.4th at p. 1321.)

> " ' "[P]articular vulnerability" is determined in light of the "total milieu in which the commission of the crime occurred...." [Citation.]' [Citations.] [T]here is substantial evidence to support a finding that [both victims], in the circumstances of this case, were in fact particularly vulnerable victims

19.

of [the defendant's] crime. There is no empirical evidence in the appellate record showing that the 'usual' victim of gross vehicular manslaughter has absolutely no advance warning or ability to attempt to avoid the defendant's car. On the contrary, one can envision many situations involving gross vehicular manslaughter (whether a section 191.5, subd. (a) offense or otherwise) in which the victim has at least some advance notice or warning of the imminent risk posed by the defendant's car that allows him or her at least some opportunity to attempt to avoid the collision. Those victims presumably should be considered less vulnerable than [the two victims] in this case. [The defendant's] car was traveling in the opposite direction of oncoming traffic on northbound Interstate 5 at a high rate of speed. Despite the late-night darkness, its headlights were off. In contrast, the [victims'] car was traveling in the proper direction at a normal rate of speed and had its headlights on. Based on those circumstances, the trial court could have reasonably concluded [the victims] were *particularly* vulnerable because they, apparently unlike 'usual' victims of gross vehicular manslaughter, had absolutely no advance warning or ability to attempt to avoid the oncoming car." (*Id*. at p. 1321.)[8]

*Weaver* held the court's finding that the offense was " 'horrific' " may have been an aggravating circumstance under rule 4.421(a)(1), that the offense involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness. (*Weaver, supra*, 149 Cal.App.4th at p. 1322.) "In any event, rule 4.408(a) authorizes a trial court to consider 'additional criteria reasonably related to the decision being made.' The trial court could reasonably conclude the 'horrific' nature of [the defendant's] offense was reasonably related to its sentencing choice. Therefore, it properly considered that factor as an aggravating circumstance." (*Ibid*., fn. omitted.) The evidence supported that factor because the

---

[8] In reaching this holding, *Weaver* disagreed with a series of cases that held that "[t]he element of vulnerability is inherent in the very crime of vehicular manslaughter caused by a driver under the influence of alcohol, and to use that factor to aggravate the term is improper, absent 'extraordinary' circumstances. [Citation.] Precisely because of their inherent vulnerability, drunk driving victims should not be considered more vulnerable than victims in other cases." (*People v. Piceno* (1987) 195 Cal.App.3d 1353, 1358; *People v. McNiece* (1986) 181 Cal.App.3d 1048, 1058–1060, disapproved on other grounds in *People v. McFarland* (1989) 47 Cal.3d 798, 804–805; *People v. Bloom* (1983) 142 Cal.App.3d 310, 321–322.)

20.

defendant's conduct "in deciding to drive and her actions in driving while intoxicated were horrific." (*Ibid.*)

*Weaver* next held the court reasonably found the defendant's "continuation of driving after the 'near-miss' prior to the collision, her high BAC, and the presence of cocaine in her system" were aggravating factors because "rule 4.408(a) authorized the trial court to consider them in making its sentencing choice. Although [the defendant] argues those circumstances were not unlike circumstances in other section 191.5, subdivision (a) offenses, there is no requirement under rule 4.408 or 4.421 (or otherwise) that those circumstances be particularly egregious in comparison with other like offenses." (*Weaver, supra*, 149 Cal.App.4th at p. 1322.)[9]

### D. *The Court Did Not Abuse Its Discretion*

The court did not abuse its discretion when it imposed the upper term in this case. First, the record refutes defendant's assertion that the court sentenced him based on "emotion rather than reason" simply because it reviewed the dash-cam video and the photographs introduced at the sentencing hearing. The court's findings reflect that it did not rely on emotion, and instead addressed the nature and circumstances of the offense based on the facts as agreed to by both parties in their arguments at the sentencing hearing.

Second, defendant acknowledges that he entered an "open plea" to the charges and insisted on receiving the maximum prison term. An open plea is "one under which the defendant is not offered any promises. [Citation.] In other words, the defendant

---

[9] *Weaver* also addressed a separate issue, whether the defendant was properly sentenced for both gross vehicular manslaughter based on the deceased victim, plus a great bodily injury enhancement under section 12022.7 based on the surviving victim's injuries, even though the surviving victim was not the subject of a separate charge. (*Weaver, supra*, 149 Cal.App.4th at pp. 1331–1335.) *Weaver* was later disapproved on this point by *People v. Cook, supra,* 60 Cal.4th at pp. 935–937, that held a great bodily injury enhancement cannot attach to a murder or manslaughter conviction.

'plead[s] unconditionally, admitting all charges and exposing himself to the maximum possible sentence if the court later chose to impose it.' [Citation.]" (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.) Defendant voluntarily entered his plea in the absence of any plea agreement or indicated sentence. Defendant repeatedly told the probation officer that he should receive the upper term, although he hedged in his letter to the court and said he would accept the upper term if he did not receive probation. In any event, the court was not bound by any negotiations or indicated terms when it imposed sentence in this case.

Third, the court did not rely on aggravating circumstances that also constituted elements of the crime when it imposed the upper term. Defendant argues his conduct of driving at a high rate speed, while under the influence of three different drugs, and the level of his intoxication were subsumed into the elements of the offense, because if his conduct had only been "slightly negligent" and if he was only "minimally impaired," his conduct would not have been grossly negligent.

As explained in *Castorena*, however, "where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence. [Citation.]" (*Castorena, supra*, 51 Cal.App.4th at p. 562.) Respondent correctly concedes the court improperly relied on the factor that the crime involved great bodily injury since the victim's death was an element of gross vehicular manslaughter while intoxicated. (Rule 4.420(d); *People v. McNiece, supra,* 181 Cal.App.3d at p. 1059.) However, there were other aggravating factors in this case.

As in *Castorena* and *Weaver*, defendant's conduct was egregious beyond the point of simply being gross negligence. By defendant's own admission, Ms. Thone knew of defendant's depression and offered to join him for the Hmong New Year event since he could not celebrate with his daughter. Also, by his own admission, defendant voluntarily consumed unknown amounts of illegal drugs the night before their planned drive to

22.

Fresno, even though he knew Ms. Thone was going to be in the car with him in an attempt to raise his spirits. He admittedly decided his consumption of those drugs was insufficient for some reason and felt compelled to use additional drugs on the morning of their departure. While defendant was unable to recall exactly what he consumed from his unknown " 'pile,' " his blood test was positive for cocaine, methamphetamine, and opiates, his urine sample was positive for amphetamines, benzodiazepine, cocaine, PCP, and opiates, and he had black tar heroin, cocaine, PCC that was a precursor of PCP, and amphetamine and morphine pills in the car.

As relevant to this case, section 191.5 requires a violation of Vehicle Code section 23153, that defendant was driving under the influence of "any drug" while concurrently doing any act forbidden by law, or neglecting any duty imposed by law in driving the vehicle, that proximately causes bodily injury to another person. (Veh. Code, § 23153, subd. (f).) A person may commit an act of gross negligence while meeting the statutory minimum for being under the influence of "any drug," and it is not necessary for that person to have consumed excessive levels of drugs. As applied to this case, the court did not improperly consider defendant's consumption of at least three illegal substances as an aggravating circumstance.

In addition, defendant's intoxication did not cause him to simply lose control of his car or drive at a high rate of speed. Instead, he drove onto a dirt median to pass another car that was in front of him, even though it was traveling at the posted speed limit and he was on a two-lane roadway. Defendant came upon that vehicle while already driving at a high rate of speed, and he was going at least 100 miles per hour when he swerved onto the dirt median to pass it. Defendant swerved back from the dirt median onto the roadway, and then went across both lanes and hit the dirt shoulder and the ditch, flipping his car multiple times.

Defendant disputes the court's finding that his conduct was "violent" and "created 'a serious danger to society' " and argues his grossly negligent driving was no more

23.

serious than any other act of gross vehicular manslaughter. "[O]ne who drives with a very high level of intoxication is indeed more negligent, more dangerous, and thus more culpable than one who drives near the legal limit of intoxication, just as one who exceeds the speed limit by 50 miles per hour exhibits greater negligence than one who exceeds the speed limit by 5 miles per hour." (*People v. Von Staden, supra,* 195 Cal.App.3d at p. 1428.) By defendant's own admission, he was traveling on the day after Christmas and traffic was heavy. In addition, he placed two other motorists at risk with his behavior as he swerved and weaved across the roadway. There was no evidence of any obstruction or hazard that required defendant to accelerate, pass the second vehicle, or swerve on and off the dirt median. Defendant's conduct created the near certainty that an accident would occur and result in serious injury.

Defendant next argues that the court improperly found that he showed callousness or at least indifference to Ms. Thone because such an aggravating factor is again based on elements of gross vehicular manslaughter by showing disregard to human life or indifference to the consequences of his acts. Defendant complains the court improperly cited Ms. Thone's youth as a factor compared to his own age, and argues she was no more vulnerable than any other victim of gross vehicular manslaughter.

As explained in *Weaver*, however, " ' "[p]articular vulnerability" is determined in light of the "total milieu in which the commission of the crime occurred ...." [Citation.]' [Citation.] … There is no empirical evidence … showing that the 'usual' victim of gross vehicular manslaughter has absolutely no advance warning or ability to attempt to avoid the defendant's car. On the contrary, one can envision many situations involving gross vehicular manslaughter (whether a section 191.5, subdivision (a) offense or otherwise) in which the victim has at least some advance notice or warning of the imminent risk posed by the defendant's car that allows him or her at least some opportunity to attempt to avoid the collision. Those victims presumably should be considered less vulnerable than [the two victims] in this case." (*Weaver, supra*, 149 Cal.App.4th at p. 1321.)

Based on this record, the court reasonably concluded Ms. Thone was particularly vulnerable because while she may have known of his depressed state, there is no evidence she knew about his extensive drug consumption in the hours leading to the fatal crash, or that she had ability to get out of the car or stop him as he weaved on and off the roadway at a high rate of speed.

Defendant's arguments herein would prevent a court from imposing an aggravated term in any gross vehicular manslaughter case, a result that was "never intended by the Legislature …." (*Castorena, supra*, 51 Cal.App.4th at p. 563.) The court did not abuse its discretion when it relied on facts that went beyond those necessary to prove the underlying crime.

### E. *The Alleged Mitigating Factors*

Defendant argues the court abused its discretion because it only found one mitigating factor, that he took responsibility for his actions, while failing to "appreciate many factors in mitigation."

A trial court has no obligation to make an express statement of reasons as to why it deemed the proffered factors in mitigation insufficient. "[A] trial court may 'minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.]" (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.) Nevertheless, the court was aware and acknowledged mitigating factors supported by the record, that defendant did not have a prior record, he appeared genuinely remorseful, and even that his life had been "spinning out of control" for at least six months prior to the fatal crash.

Defendant asserts the court failed to acknowledge the additional mitigating factors that he voluntarily admitted wrongdoing at an early stage, and he made restitution to the victim's family. However, the court acknowledged defendant's early plea and that he appeared genuinely remorseful. It also reviewed the entirety of the materials in the probation report, along with the exhibits introduced at the sentencing hearing, which

included defendant's statements that he had already given $45,000 to Ms. Thone's family.

### 1. "Unusual Circumstances"

Defendant argues the court also failed to address another mitigating circumstance, that the offense was committed because of "unusual circumstances" resulting from his serious family problems when daughter left him, and his drug abuse was allegedly the result of his "attempt to cope" with this issue.

Rule 4.423(a)(3) states that a mitigating factor relating to the crime is that it was committed "because of an unusual circumstance, such as great provocation, that is unlikely to recur." At the sentencing hearing, the court acknowledged defendant had been suffering from family problems for six months prior to the fatal collision. The record, however, does not support defendant's claim that he used drugs before the fatal crash to "cope" with this situation. In his statement to the probation officer, defendant claimed he wasn't "into drugs" until he "got into the Adult Film Industry," about three years prior to the fatal collision, but he also admitted he started drinking alcohol when he was 15 years old, using marijuana when he was 18 years old, and using crystal methamphetamine when he was in his 20s. Defendant said he used black tar heroin when he was depressed. He also used Xanax and "abused" Etizolam, an analog of Xanax. Defendant thus admitted his extensive drug use predated his family problems.

### 2. "Willing Participant"

Next, defendant asserts the court failed to consider as a mitigating circumstance that Ms. Thone was "a 'willing participant'" in the crime because she agreed to go to Fresno with him, she knew he was depressed, she knew he was using drugs, and she chose to get into defendant's car even though she was "forewarned" that he was impaired and was thus less vulnerable.

Rule 4.423(a)(2) states that a mitigating factor relating to the crime is that the victim "was an initiator of, willing participant in, or aggressor or provoker of the

26.

incident." Defendant's argument on this point is based on his own self-serving statements to the probation officer. While he admitted his consumption of an unknown amount of drugs, he also asserted Ms. Thone "knew that I was doing drugs and stuff, but I didn't feel intoxicated. I told her, 'I honestly don't feel impaired.' I drove for like three hours and there was a lot of traffic." He argues that Ms. Thone had an "inclination" that he was "suicidal and self-loathing" and "indeed impaired," and her presence in his car amounted to a mitigating factor.

Defendant's account of what Ms. Thone allegedly said does not amount to a mitigating circumstance. Defendant stated he used drugs the night before and the morning of their trip to Fresno. There is no evidence Ms. Thone was present when he used drugs, she did not have any controlled substances in her system at the time of her death, and defendant and Ms. Thone were not using drugs together. Defendant gave no context for Ms. Thone's alleged statements, and his version of events could have been equally consistent with a conversation that occurred in the car once Ms. Thone realized defendant was driving in an erratic and unsafe manner and that he had used drugs, when she was trapped in his car and unable to escape.

### 3. "A Mental Condition"

Defendant further argues the court failed to consider the mitigating factor that he was clearly suffering from "a mental condition" that significantly reduced his culpability because he was severely depressed as a result of his family situation, he was self-medicating with drugs, a narcotics addiction is a mitigating factor, and his offense was clearly related to his mental health.

Rule 4.423(b)(2) states that a mitigating factor relating to the defendant is that he was "suffering from a mental or physical condition that significantly reduced culpability for the crime." Defendant did not introduce any medical or psychiatric reports or opinions to support such an alleged mental or physical condition. As already noted, defendant admitted he had been using drugs for several years prior to the fatal crash.

27.

While defendant said Ms. Thone accompanied him to Fresno to attend the celebration with him and lift his spirits, he was still was carrying a substantial amount of narcotics, including heroin, that raised the inference of his continued intent to use drugs regardless of his alleged emotional situation.

We thus conclude the court did not abuse its discretion when it imposed the upper term in this case.

## II. The Restitution Fine and Fees

As previously set forth, the trial court imposed a restitution fine of $6,000 (§ 1202.4, subd. (b)(1)), suspended a parole revocation fine of $6,000 (§ 1202.45), a total court operations assessment of $160 (§ 1465.8); and a total court facilities assessment of $120 (Gov. Code, § 70373). Defendant challenges the imposition of fines, fees and assessments without a determination on his ability to pay, in accordance with the postsentencing decision in *Dueñas*, *supra*, 30 Cal.App.5th 1157. The People dispute defendant's entitlement to any relief under *Dueñas*.[10]

Defendant had a statutory right to object to the $6,000 restitution fine when it was imposed based on inability to pay, but he did not do so. (§ 1202.4, subds. (c), (d).) Accordingly, we conclude defendant forfeited appellate review of his claim that the trial court erred in imposing the fines and court assessments without determining his ability to pay. (*People v. Montelongo* (2020) __ Cal.App.5th __ [274 Cal.Rptr.3d 267, 281–282]; *People v. Taylor* (2019) 43 Cal.App.5th 390, 399–400; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.)

We recognize that the imposition of court operations and facilities assessments under section 1465.8 and Government Code section 70373 is statutorily mandated

---

[10] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

irrespective of ability to pay, but we agree with *Gutierrez* that "[a]s a practical matter, if [defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $[280] in fees." (*People v. Gutierrez, supra*, 35 Cal.App.5th at p. 1033; accord, *People v. Montelongo, supra*, 274 Cal.Rptr. at p. 282.) The same reasoning applies here, where defendant failed to object to a $6,000 restitution fine.

In *Taylor,* the court applied the forfeiture doctrine where the defendant failed to object to the imposition of the maximum restitution fine, but declined to do so with respect to the court operations and facilities fees, reasoning that the defendant's failure to object to the restitution fine despite a statutory right to do so may have been based on reasons unrelated to his ability to pay. (*People v. Taylor, supra*, 43 Cal.5th at pp. 400–401; accord, *People v. Oliver* (2020) 54 Cal.App.5th 1084, 1100–1101.) We are unpersuaded on that point, however, and conclude that defendant forfeited his ability-to-pay claim under *Dueñas* in its entirety by failing to object to the $6,000 restitution fine.

## III. Correction of Abstract of Judgment

The abstract of judgment must be corrected as to the fees imposed in this case, but both parties erroneously state the amounts imposed by the court.

### A. *The Statutory Authorities*

A court operations assessment of $40 (§ 1465.8) and a court facilities assessment of $30 (Gov. Code, § 70373), "shall be imposed on every conviction of a criminal offense…." (*Ibid.*)

Both fees attach to each count on which a defendant is convicted, and not merely to each count upon which sentence was imposed. Thus, the fees must be imposed even if a concurrent term was imposed, or the sentence was stayed pursuant to section 654. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 484–485; *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865–866.)

**B.    *The Record***

As noted above, defendant pleaded guilty to four counts.  In addition to the restitution fine of $6,000, the reporter's transcript shows the court correctly imposed a court operations assessment of $40 (§ 1465.8) and a criminal conviction assessment of $30 (Gov. Code, § 70373) for each of defendant's four convictions.

The minute order correctly states the court imposed $40 for each conviction under section 1465.8, $30 for each conviction under Government Code section 70373, and the restitution fine of $6,000, for a total of $6,280.  Thus, the total amount correctly imposed was $160 under section 1465.8, and $120 under Government Code section 70373.

However, the abstract of judgment incorrectly states a total of $120 was imposed under section 1465.8, and a total of $90 was imposed under Government Code section 70373.

**C.    *Analysis***

On appeal, defendant states that at the sentencing hearing, the court imposed fines of $120 under section 1465.8, and $90 under Government Code section 70373, but "the clerk's minutes incorrectly reflect the fines imposed pursuant to … section 1465.8, and Government Code section 70373, as $160, and $120, respectively," while "the Abstract of Judgement [*sic*] correctly lists these fines as $120, and $90, respectively."  Respondent similarly states that defendant was ordered to pay a $120 court operations assessment under section 1465.8, and a $90 court facilities assessment under Government Code section 70373.

Both parties are incorrect.  The court was required to impose fees of $40 and $30 for each of defendant's four convictions, and correctly imposed those amounts for a total of $160 under section 1465.8, and $120 under Government Code section 70373.  The minute order is correct, but the abstract of judgment is wrong and must be corrected accordingly.

30.

## DISPOSITION

The abstract of judgment is ordered corrected to state that defendant was ordered to pay $160 in court operations assessments (§ 1465.8) and $120 in criminal conviction assessments (Gov. Code, § 70373).

In all other respects the judgment is affirmed.